CHARLES M. GILLIS & CO. *v.* NELSON & DONALSON.

16 275
52 1250

The proces-verbal of a survey made under the order of the Court is admissible in evidence as a plan connected with the surveyor's testimony and essential to its explanation. 6 N. S. 339.

Prescription ceases to run, whenever the debtor or possessor makes acknowledgment of the right of the person whose title they prescribed. So that where defendants aggravated a servitude within ten years, prescription was interrupted, and the plaintiff's right acknowledged.

The verbal declarations of a defendant may be given in evidence even to charge land with a servitude, when they tend to interrupt prescription.

He to whom a servitude is due has a right to make all the works necessary to use and preserve the same. Such works are at his expense, and not at the expense of the owner of the estate which owes the servitude, unless the title by which it is established shows the contrary. C. C. 768, 769.

If the proprietor of two estates between which there exists an apparent sign of servitude, sell one of those estates, and if the deed of sale be silent respecting the servitude, the same shall continue to exist actively or passively in favor or upon the estate which has been sold. C. C. 765, 771.

*Per curiam:* It does not appear to us that a person not a party to an agreement, nor representing real property to which it has relation, can maintain an action upon it, unless there is an express stipulation in his favor, or one which results by a manifest implication.

APPEAL from the District Court of the Parish of Lafourche, *Roman*, *J*, *Bush*, *Beattie & Allain*, for plaintiffs. *Clifford Belcher*, for defendants and appellants.

. MERRICK, C. J. " On the 29th day of November, 1843, the heirs of *Thomas Bibb* were the owners of two plantations fronting on the Bayou Lafourche, and having a depth of eighty arpents. The upper one of these plantations was called the Coulon Place, and the lower the Johnson Place. The two places were separated from one another by the plantation of the estate of *John Mills*, also fronting on the Bayou Lafourche, and having also a depth of eighty arpents."

"*Bernard Morvan* was then the owner of a small tract of land in the rear of these three plantations."

" To facilitate the draining of the Coulon plantation, and carry the surplus waters of the same into the swamp on the rear of the Johnson Place, belonging to the same owners, the heirs of *Thomas Bibb*, one of the heirs purchased a narrow strip of land in the rear of the Mills plantation on which to make a ditch or canal from the Coulon to the Johnson Place."

" As the action in this case is based principally upon this act, we shall copy it from the record."

"*Know all men by these presents*, that *Bernard Morvan* and *Marie Bondreaux*, wife of said *Morvan*, both of the Parish of Lafourche Interior, for and in consideration of the sum of seventy-five dollars to them in hand paid, the receipt where-

of is hereby acknowledged, have this day bargained, sold and delivered to *Thomas Bibb*, of the said Parish of Lafourche Interior, a parcel or lot of land situated in said parish, included, bounded and surrounded by the following lines, viz: Supposing a line drawn in a northerly direction on the lower or eastern line of the Coulon plantations, situated in said parish, belonging to the estate of *Thomas Bibb;* said line to run on the boundary between the plantation known as that belonging to the estate of *John Mills* and the said Coulon plantation, to continue to the end of the double concession, or until it strikes the plantation of *Bernard Morvan*. From this point, whence [where] such a line would strike the plantation of *Bernard Morvan*, commences the boundary and dimensions of the lot or parcel of ground sold by said *Bernard Morvan* to *Thomas Bibb*, to wit: From thence twenty-five feet in western direction, on the line between the Coulon plantation and the plantation of *B. Morvan;* thence northerly twenty-five feet, thence easterly twenty-five feet, from and parallel to the present line between the plantation belonging to the estate of *John Mills* and that of *B. Morvan*, to continue in the same direction twenty-five feet beyond or to the east of where said line would intersect a line drawn in a northern direction on the boundary between the Johnson plantation, belonging to the estate of *Thomas Bibb*, and the plantation belonging to the estate of *John Mills;* thence twenty-five feet south, until it strikes the boundary between the Johnson plantation and that of *B. Morvan*."

" In testimony whereof, the parties have signed their names, except the said *Morvan* and wife, not knowing how to sign, made their ordinary mark in presence of *B. F. Cross* and *Henry E. Ledet*, witnesses, this 29th November, eighteen hundred and forty-three."

" It is well understood, before the agreement is signed, that the said *Bibb* obligate and bound himself to throw the dirt on the north side of the dight, [ditch] and also to continue the said dight [ditch] so the water shall never interfere said *Bernard*."

" Signed,          BERNARD MORVAN, his ✕ mark.
                   MARIE BONDREAUX, her ✕ mark.
                   THOMAS BIBB.

" Witnesses signed :    H. E. LEDET.
                        B. F. CROSS. "

" It should be observed here, that although this land was purchased in the name of a single one of the heirs of *Thomas Bibb*, it it is evident that it was acquired for all of the heirs, for the improvement of the property owned by them jointly, and they so treat it in a subsequent act."

" This agreement, under private signature, was duly proved, and recorded in the conveyance office of the parish."

" On the 14th of February, 1846, *Bibb's* heirs sold to the defendants, *Nelson & Donnelson*, the Coulon plantation, and in the sale is contained this clause :"

" And it is hereby agreed and understood by and between the said parties, that the said purchasers shall have the right and privilege of draining the said plantation in the same manner that it has heretofore been drained, and that the leading canal or ditch on said plantation is to discharge into a swamp on the Johnson plantation, owned by the said vendors."

" The leading canal or ditch here mentioned is that which had been cut on the land acquired of *Morvan*, and which, after reaching the Johnson Place, is continued for some distance on that place."

" Subsequently, the Mills plantation was acquired by *Nelson & Donnelson*, and the Johnson Place was sold by the heirs of *Bibb* to *Egana*."

" On the sixth of July, 1857, *Morvan* sold his land to *H. E. Ledet & Bros.;* and on the same day *Ledet & Bros.* conveyed it by act of exchange to *C. M. Gillis & Co.*"

*C. M. Gillis & Co.* are subrogated to the rights of *Morvan*.

In 1853 *Egana & Mitchell*, then owning the Johnson plantation, made an agreement with the defendants, by which the former were to be permitted to close a small bayou running transversely across the Mills tract and the rear corner of the Johnson plantation, and terminating in a swamp where it is contended the rear ditch of defendants ought to terminate. In the instrument authenticating the contract, *Egana & Mitchell* agreed to open a ditch on the line between them and defendants from this bayou, " running north to the main canal of the said *Nelson & Donnelson*, and on the line between the parties. Said canal or ditch to be made of sufficient width to carry off the water which has been heretofore carried off by said bayou, and which has drained that part of the plantation known as the Fields plantation. Said canal to be at least fifteen feet wide and as deep as the main canal of the said *Nelson & Donnelson* where it intersects or runs into said canal. They also agree that the said *Nelson & Donnelson* may enlarge or widen their canal as wide as they may think necessary to carry off the water, say about fifteen feet on their side of said canal, and that they may extend said canal into the swamp as far as they think necessary, so as not to run south of their eighty arpent line." The course of the Bayou Lafourche at this point is east. Hence, the rear of the plantations is on the north.

The action is set forth in the plaintiffs' petition as follows :

" That *Nelson & Donnelson*, exercising possession and ownership of the lot of land sold by *Morvan* to *Bibb*, open and now use on the said twenty-five feet of land, a large ditch to which they have not given a sufficient outlet, and to the north of which they have not thrown up a sufficient embankment, by means of which ditch the said *Nelson & Donnelson* accumulate all the surplus waters from the Coulon and Field plantation, both of which plantations are now in the possession of, and belong to, *Nelson & Donnelson*, and thereby overflow and inundate the greater portion of the *Morvan* land belonging to petitioners, contrary to, and in violation of, the express covenant of the said *Bibb* with the said *Morvan*, and contrary to law ; which waters thence overflow and inundate the crop plantation of petitioners, contrary to, and in violation of, the legal rights of petitioners."

" Plaintiffs' damages are laid at five thousand dollars, and they also pray for a specific performance of the covenants in the agreement between *Bibb* and *Morvan*, alleging that *Nelson & Donnelson* had assumed all of *Bibb's* obligations by the purchase of the land."

" The defendants, after a general denial, aver that they bought by public act of the heirs of *Thomas Bibb*, deceased, the Coulon plantation, with its rights, &c., and expressly with the right of draining the same in the same manner that it had hitherto been drained ; and that the leading canal or ditch was to discharge into a swamp on the Johnson place, then owned by the said vendors : and further, that the obligation to continue the ditch declared the act under private signature is altogether personal to the parties thereto, and that defendants are not bound by it."

" They further allege that said *Morvan* actually continued said ditch as far as necessary, and to the entire satisfaction of said *Morvan*, and up to the time of the present suit no complaint was ever made in respect to the said ditch."

GILLIS
*v.*
NELSON.

"They further allege, that they have always drained their said plantation in the same way and manner that it was drained previous to their said purchase; and their said vendors are bound to warrant and defend them in their title so to drain their said plantation, and to indemnify them against the consequences of this suit. And moreover, they aver that by the said act of purchase a servitude was established in favor of the said Coulon plantation on the Johnson plantation, then owned by the said vendors and now by *John Y. de Egana*, who has succeeded by reason of the law to all the obligations of the said vendors, but who enclosed the said swamp, or a part thereof, with a levee, and impeded the discharge of waters into the said swamp, to which fact, and to no fault of defendants, the overflowing of defendants' lands, if such ever occurred, which they deny, is imputed."

"The defendants cited the vendors, the heirs of *Thomas Bibb*, deceased, to warrant and defend them in this suit. They likewise brought *Egana* into the suit, but considering that the plaintiff was bound to bring his suit against the proper parties, dismissed their proceedings as to him."

"The heirs of *Thomas Bibb* excepted to the call in warranty, but the exception was overruled."

"The cause was tried by the Judge, who gave judgment in favor of the plaintiffs and against the defendants, condemning the latter to continue the ditch as more particularly set forth in the judgment. The Court likewise gave judgment against the defendants and in favor of their vendors called in warranty, on the ground, as stated in the opinion of the Court, that 'the defendants, at the time of sale having full knowledge of the existence of said servitude, which, besides, is a continuous and apparent one, are entitled to and allowed no judgment in warranty against their vendors.'"

"After an ineffectual motion for a new trial, the defendants have appealed, both as against the plaintiffs and as against their vendors called in warranty."

Before proceeding to the merits of the case, we will consider the bills of exception presented by the defendants.

The first is to the introduction in evidence of the proces-verbal of the survey made under the order of the Court, for want of the requisite witnesses and for want of notice to the *curator ad hoc.* The Court did not err. The testimony of the surveyor was taken on the trial, and the survey was received as a plan connected with his testimony, and essential to its explanation, and therefore admissible. *Milligan* v. *Hargrove*, 6 N. S. 339.

There is a bill of exception taken by defendants to the testimony of *H. E. Ledet* proving certain verbal declarations of *Nelson*, one of the defendants, as to the ditch or canal draining the plantation of *Nelson & Donnelson*, and as to a certain offer to extend the same, on the ground that parol proof is insufficient and inadmissible to charge lands with a servitude. The testimony was admitted to explain an assumed latent ambiguity in relation to the act under private signature; and as a recognition of the existence and extent of the servitude therein stipulated; the interruption of prescription, and the construction and understanding of the parties themselves.

The testimony was admissible to show an interruption of prescription; and as the Judge confined its effect to that purpose in making up the judgment, it will be unnecessary to consider whether it was or was not admissible on the other grounds.

The third bill of exception was as to the introduction in evidence of the act between *Morvan* and wife and *Bibb*, on the ground that it was personal to the for-

mer, and that no other person could avail himself of its stipulations, and that it was not binding on the defendants. not having been assumed by them expressly or publicly.

The act is pleaded in the plaintiffs' petition, and the objection is to the effect of the instrument, which can be best considered with the merits. Its introduction in evidence did not prejudice the defendants, because it was still open to all objections, except as to its execution, and the defendants were at liberty to urge the same on the trial.

On the merits, the first questions seem to arise upon the construction to be given to the *Morvan* deed.

Its contemplation, reference being had to the situation of the lands, brings us to these conclusions, viz :

First : It was a sale from *Morvan* to *Bibb*, of a narrow piece of land for the purpose of allowing the latter to excavate a ditch therein, and throw the embankment on the north side of such ditch.

Secondly : It created in favor of the residue of the Morvan tract a real servitude upon both the Coulon and Johnson plantations, which they were bound to suffer and maintain in favor of said tract. The land sold and the possessors thereof being bound to keep the levee on the north side of the ditch sufficiently high to protect the residue of the tract, and the Johnson place being bound especially to continue the ditch so far as might be needed to convey off the water, as the drain was upon the latter tract of land, the contract does not appear to us to be personal, for its object could only be for the advantage of the respective tracts of land. The contract, then, was a real contract, and bound the Bibb lands in favor of the Morvan tract, into whose hands soever they might pass. When *Bibb's* heirs sold the Coulon tract to *Nelson & Donnelson*, they expressly established another servitude upon the Johnson plantation (now owned by *Egana*) in favor of the Coulon plantation, binding the one to submit in the form prescribed, to the drainage of the other ; but here the works necessary to such drainage (if undertaken) were at the charge of the defendants' plantation.

If the servitude had been permitted to remain as at first established, we think it is clear that the proprietors of the Morvan tract could have enforced it against the narrow tract of land sold and held by defendants, and the Johnson plantation in the hands of *Egana*, or so much thereof at least as is affected by the servitude.

It now remains to be seen what effect the subsequent agreement in 1853 between *Nelson & Donnelson* and *Mitchell* and *Egana* will have upon the controversy.

It has already been seen that the small bayou having its rise on the Mills tract and running transversely across the Johnson plantation, terminated at nearly the same point where the main ditch of the defendants terminates. But the proof shows, which is corroborated by the plan, that the side canal on the Mills tract, excavated by *Mitchell* and *Egana*, at nearly right angles with the rear canal of *Nelson & Donnelson*, precipitates more water upon the Morvan tract than would have been the case if the same had been permitted to flow into the swamp by its natural course, the bayou. The servitude has thus been aggravated by the owners of the Egana plantation, with the consent of the defendants.

Are there any covenants, then, in the agreements between the other parties, which may be viewed as stipulations between the plaintiffs or their land, and will thus maintain the action in its present form without making *Egana* a party ? We cannot so construe the sale by *Bibb's* heirs to defendants, nor their agreement with

GILLIS
*v.*
NELSON.

*Mitchell* and *Egana* in 1853. It does not appear to us that a person not a party to an agreement, nor representing real property to which it has relation, can maintain an action upon it unless there is an express stipulation in his favor, or one which results by a manifest implication.

The plaintiffs pray, among other things, that the defendants be decreed to open the ditch upon *Egana's* land ; and it is so decreed by the Court. But it is neither the defendants nor *Egana* who owe the servitude; it is the land ; and they may relieve themselves by surrendering the same to the plaintiffs. Hence, as between the plaintiffs and the defendants upon the rights reserved by the Morvan deed, the latter cannot be condemned to enter upon *Egana's* land and perform works there for the maintenance of the servitude and the benefit of the owners of the Morvan tract. See 769, 675 and 771, C. C. ; Pardessus, No. 69 ; 2 Marcadé, Art. 699, pp. 625–628 ; 3 Toul. No. 680 ; *Landry* v. *Mitchell*, 3 An. 13.

The defendants also rely on the plea of prescription of ten years. If it should be held that obstructions to natural drains may be legalized by the prescriptions of ten or thirty years under articles 761, 3470, C. C., it will not avail the defendants because, within ten years, they have aggravated the servitude by their agreement with *Egana* and *Mitchell*, which has resulted in the obstruction of the small bayou which carried off, at some distance, a portion of the water now precipitated on the borders of the Morvan tract, and because *Nelson* has, within the same period, acknowledged *Morvan's* right, now held by plaintiffs. C. C. 3486. The proof does not make out a case in favor of defendants against warrantors.

These views make it proper that the case should be remanded, in order that *Egana* should be made a party, as it is evident that complete relief cannot be granted plaintiffs in his absence from the suit.

It is, therefore, ordered, adjudged and decreed by the Court, that the judgment of the lower Court be avoided and reversed, and that this case be remanded to the lower Court, with leave to the plaintiffs to amend and make further parties, on such condition as to the costs as may be equitable and just. And it is further ordered, that the plaintiffs pay the costs of the appeal.

VOORHIES, J., absent.