OVERTON, J.
 

 This is an action for slander of title, filed on September 21, 1927, involving the title to certain mineral rights, on land in the Anse La Butte oil field, in the parish of St. Martin.
 

 Antoine Patin was the undisputed owner of this land, without any severance of the rights of ownership. In April, 1901, Patin conveyed to Hiram W. Parker, Jean Jacques Nassans, and George E. Sears the exclusive and perpetual right and privilege, for an indefinite time, to excavate, bore, or dig for oil, gas, and minerals of any kind on and in the forty-arpent tract. On July 8, 1901 Patin’s vendees transferred the rights, acquired by their purr-chase, to plaintiff. From that time, until the institution of this suit, various leases and subleases have emanated from plaintiff and its assigns, and those holding under them'.
 

 When Patin acquired the land the community of acquets and gains was in existence between him and his wife. However, about 1923 — years after plaintiff acquired the mineral rights on the property — Patin’s wife died, and the community thereby came to an end. In the same year her children were sent into possession of their mother’s undivided half of the land. Following this, there was a partition of all the property of the succession of the wife. For this, the fortyarpent tract was divided into four ten-arpent tracts, one ten-arpent tract, falling to each of four children, namely to Beulah Patin, who was allotted the western ten arpents, to Freddie Patin, who was allotted the adjoining ten arpents to the east, to Philomene Patin, who was allotted the adjoining ten arpents to the east of Freddie Patin, and to Editha Patin, who was allotted the eastern ten arpents.
 

 Freddie Patin transferred to Evans, Guidroz and Hebert Billeaud an undivided one-half of the mineral rights in the ten ^rpents,
 
 *616
 
 allotted to him, and later-sold the ten arpents to Isaac B. Bendel and Charles M. Parlcerson, except the undivided half interest in the minerals sold to Guidroz and Billeaud. Editha Patin sold to J. C. Nicker-son and Wickliff V. Vennard the ten arpents allotted to her, and Philomene and Beulah Patin sold to A. G. Broussard all the minerals in the two ten-arpent tracts allotted to them.
 

 It is these transfers by the children of Sirs. Putin, and the claims made thereunder, that have given rise to the present action of slander of title.
 

 Those made defendants in the case are A. G. Broussard, Evans Guidroz, Hebert Billeaud, Isaac B. Bendel, Charles ¡M. Parker-son, J. C. Nickerson, and Wickliff V. Vennard, all of whom claim the rights, asserted by them, under the foregoing transfers from the children of Mrs. Patin. They aver in their answers, among other things, that the mineral rights, claimed by plaintiff, have not been exercised for ten years, and therefore have been lost by the prescription of ten years, liberandi causa. They ask that they be recognized as owners of the mineral rights, claimed by them, and those of them who claim ownership of parts of the land itself ask tjiat their titles be recognized.
 

 The trial resulted in a judgment for plaintiff, recognizing it “as the legal and actual possessor of the exclusive right of the servitude on the land in Question, and overruling the pleas of prescription filed by defendants.” Of the seven defendants all have appealed from the judgment, except Broussard and Guidroz.
 

 The first well drilled on the forty-arpent tract was drilled by plaintiff’s lessees in 1908, the drilling being to a depth of approximately 1,700 feet. This well proved to be nonproductive. Thereafter at other times, under the mineral contract, acquired by plaintiff, some seven or eight wells were drilled, by lessees and sublessees. None of them, however, proved to be, from a commercial standpoint, productive. These wells ranged from 1,700 feet to 500 or 600 feet in depth. Only one of them was drilled to a depth of 1,700 feet, and only one to a depth of 1,500 feet. The rest ranged from 500 to 600 feet in depth, and salt water only was obtained from them.
 

 Some productive wells were drilled in other sections of the field, but none that produced oil, so far as appears, in paying quantities, at a depth of 750 or 767 feet, and apparently none, with but one exception, at less than a depth of 1,100 feet, and that one was not less than 900 feet deep. The forty-arpent tract was farther from the salt dome than the wells we have mentioned, which would indicate that, if oil could be produced on the land, it would be found at a greater depth than on land nearer the dome.
 

 In 1910, what is known as the Crowley Oil & Mineral Company well was drilled on the property, under the rights acquired by plaintiff. This well was drilled to a depth of 1,500 feet, without success, and is one of the wells, mentioned above. It was abandoned in the spring of 1911. Thereafter, no well was drilled on the property until October, 1920, when, under a sublease obtained by Dr. E. M. Saucier, drilling operations were begun anew. The first location selected by Dr. Saucier was quickly abandoned, because the formation was too rocky. An effort, lasting two weeks, was then made to make use of an old well, evidently with the intention of drilling it deeper, but this effort was abandoned, without actual drilling. Dr. Saucier then began drilling a new well, and, on approaching a depth of 750 feet, struck cap rock. After some difficulty he penetrated the
 
 *618
 
 lock, and went to a depth of about 767 feet, where he encountered salt water. After encountering salt water, he abandoned the well, and made no further effort to drill or explore for minerals on the property. No other well was drilled on the property or effort made to discover minerals thereon, until about 192S, when the Yount-Lee Oil Company, under arrangements, said to have been made with both sides to this controversy, began drilling, and was still drilling 'at the time of the trial of this case.
 

 Although the titles of plaintiff and its authors are in the form of sales to them, the deeds, in contemplation of law, convey nothing more than real rights in the nature of a servitude. These rights may be lost in ten years by nonuse for that period. Civil Code, arts. 789, 3546; Frost-Johnson Lumber Co. v. Sailing’s Heirs, 150 La. 756, 91 So. 207; Sellington v. Producers’ Oil Co., 152 La. 81, 92 So. 742; Lee v. Giauque, 154 La. 491, 97 So. 669; Wemple v. Nabors Oil & Gas Co., 154 La. 483, 97 So. 666.
 

 The only question presented in this court is whether plaintiff’s mineral rights have been lost by the prescription of ten years.
 

 The efforts of the Crowley Oil & Mineral Company, in the latter part of 1910 and the early part of 1931, may be deemed such use .as to interrupt prescription, and cause its course to begin anew.
 

 The solution of the problem presented is dependent upon whether the efforts of Dr. Saucier, in October, and possibly November and December, 1920, were such a use as to interrupt prescription. The question has been presented from that standpoint in this court.
 

 To use a servitude, so as to interrupt prescription, is to use it in the manner contemplated by the grant or reservation. This ruling finds support in articles 796 to 800,- inclusive, of the Civil Code, touching the mode of use of servitudes and, in connection therewith, prescription. The servitude, in this instance, was granted for the purpose of exploring for oil, gas, and other minerals, and converting them to possession, if they were discovered, and the servitude existed for that purpose. Reference must therefore be made to the object of the grant — not for the purpose of determining whether there has been a breach of any obligation that might exist to develop, but to determine whether there has been such use as to interrupt prescription.
 

 No-ironclad rule can be established to determine whether there has been such use. It may be said, however, that, in a mineral servitude, where the exploiting, though begun, has been stopped or abandoned at a depth at which there was no reasonable hope of discovering minerals in paying quantities, the use is not such as to interrupt prescription. The question was before us in Keebler v. Seubert, 167 La. 901, 120 So. 591. There it was said that the exploiting must be conducted in good faith to constitute such a use as to interrupt prescription — an expression sufficiently broad to include the rule here announced. In that case it appeared that there were two distinct tracts of land, and therefore two distinct servitudes. Oil or gas had never been discovered on either. On one of the tracts a well was drilled to a depth of 2,377 feet, which was slightly deeper than a well on neighboring land, which had proved successful, and on the other tract to a depth of 2,003 feet, when operations were suspended— not abandoned — by reason of a flood. Although the operations were not successful, the' court held that they interrupted prescription,
 
 *620
 
 obviously deeming them sufficient to do so, under the facts there stated.
 

 In the case before us, Dr. Saucier, although he. evidently began operations with the full intention of drilling to a depth at which oil or gas, if present, might be expected reasonably to be found, yet he did not do so, but abandoned the well at a depth at which it was known in the field, among drillers and oilmen, that neither oil nor gas could be expected reasonably to be found, in paying quantities, the abandonment being due probably to. the fact that he encountered salt water.. Following this abandonment, he abandoned also the property, for he made no further effort to explore for minerals on it. The abandonment, at this stage, placed the operations, so far as prescription is concerned, in the same position as if none had been conducted.
 

 Eliminating the efforts of Dr. Saucier from further consideration, some seventeen years elapsed between the operations of the Crowley Oil & Mineral Company and the institution of this suit,, without using the servitude as contemplated by law — far more than sufficient to sustain the prescription of ten years. The prescription should be sustained.
 

 ■. As, .Broussard and Guidroz have not appealed from the judgment against them, .and have made no appearance in this court, the judgment cannot be altered as to them, but will have to be amended so as to secure the rights of the remaining defendants. There is no contest, as to the. real estate involved, apart from the mineral rights.
 

 •For the reasons assigned, the judgment, appealed. from, is amended by sustaining the pleas of, prescription of. ten years, filed by thei appellants herein, and by recognizing said Bendql .and. said Parker as thé owners of the ten-arpent lot, acquired by them from Freddie Patin, and recognizing said Nickerson and said Vennard as the owners of the tenarpent lot, acquired by. them from Editha Patin, all as described in plaintiff’s petition, free from the right of servitude thereon, claimed by plaintiff and appellee, and by recognizing said Billeaud as the owner of the undivided one-fourth of the mineral rights, claimed by him, and acquired from Freddie Patin on the ten-arpent lot, acquired by said Patin, in- said partition, free from the mineral rights, claimed by plaintiff, all as described in plaintiff’s petition, and in all other respects the judgment is affirmed, plaintiff to pay the costs of this appeal, and of the lower court.