182 So. 519

GOLDSMITH v. McCOY et al.

No. 34741.

May 30, 1938.

Rehearing Denied June 27, 1938.

Plauche & Stockwell, of Lake Charles, for appellant.

McCoy, King & Jones, of Lake Charles, for appellees.

FOURNET, Justice.

This is an action in jactitation or slander of title and also for damages. The object of the action is to have declared extinguished, because of nonusage for a period of more than ten years, the servitude created by an act of exchange dated September 19, 1925, affecting property now in the possession of plaintiff, Dr. Ben Goldsmith, who is the owner thereof in fee; and to have cancelled from the records of the Parish of Calcasieu the inscription of a mortgage affecting said servitude executed by defendant, Charles A. McCoy, to secure his note, held by the Calcasieu National Bank's Liquidating Trustees who were made parties to the suit; and also to recover damages in the sum of $800 caused by the alleged slander of plaintiff's title.

The defendants filed separate answers admitting the alleged acts of slander, but set up in defense of the action that there was an interruption of prescription (1) by the acknowledgment of the interest of defendant, Charles A. McCoy, by the surface owners of the land on February 25, 1929, September 26, 1932, and January 27, 1933;

and (2) by a geophysical exploration on the land in the year 1929.

The trial judge rejected plaintiff's demand and recognized defendant, Charles A. McCoy, as the owner of an undivided one-half interest of the "subsurface or mineral estate" in or under the property, subject to the rights of the liquidating trustees of the "Calcasieu National Bank in Lake Charles" as holder of the note secured by mortgage affecting said property, and the plaintiff has appealed.

The facts of the case are susbtantially as follows: The plaintiff, Dr. Ben Goldsmith, acquired from the Oil Lands Development Corporation, by general warranty deed dated May 7, 1935, the East half of Southwest Quarter, Section One, Township Nine South, Range Nine West, Louisiana Meridian, which act was duly recorded in the conveyance records of Calcasieu Parish. But there appear of record (1) an act of exchange dated September 19, 1925, recorded in the Conveyance records of the Parish of Calcasieu on November 5, 1925, by which the defendant, Charles A. McCoy, acquired an undivided one-half interest in and to the "sub-surface estate" of the above described property, in which act the estate was fictitiously divided into "a surface and sub-surface estate by a horizontal line running 300 feet beneath the surface, starting at the lowest point on each respective tract, the surface estate to include everything above said line, and the subsurface estate shall consist of everything lying beneath said horizontal line, including all the oil, gas, sulphur and mineral deposits * * *"; and (2) an act of

mortgage recorded in the mortgage records of Calcasieu Parish, executed on September 4, 1927, by defendant, Charles A. McCoy, to secure his note of $25,000, and affecting, among several properties, the servitude hereinabove described.

After ten years had run from the date of defendant's acquisition of the so-called subsurface estate, plaintiff attempted to create a mineral servitude on his property by selling a part of his mineral rights but because of the defendant's claims to the continuance of the servitude created in his favor by the act of September 19, 1925, he was unable to consummate the transaction, whereupon he made demand upon the defendant to desist from further slandering his title by executing the proper document evidencing the same for recordation, which was refused by him in a letter addressed to plaintiff, dated November 13, 1936, the pertinent part of which reads as follows:

"The abstract does not show it, but on January 26, 1933, the Oil Land Development Corporation executed an oil, gas and mineral lease covering the property in which my ownership of one-half of the oil, gas and minerals was specifically acknowledged, which interrupted prescription, said lease being effective for a period of six months thereafter. * * *

"On two previous occasions, once in 1929, Mr. C. E. Berdon and Mr. C. J. Campbell, who were then the owners of the East half of Southwest Quarter of Section 1, executed an oil, gas and mineral lease in which they acknowledged my ownership of one-half thereof, and in 1932 the Oil Lands Development Corporation and F. E. Poe

each executed leases upon the lands owned by them containing the same acknowledgment. Therefore, the ten year prescription upon this land has been amply interrupted and will not prescribe until July 26, 1943."

The leases referred to are identical in substance and each contains the following clause: "The lessee owns an undivided one-half interest in the sub-surface of the above described land and is entitled to retain one-half of the royalties and rentals herein provided for."

It is plaintiff's contention that the acknowledgments relied upon by the defendant to interrupt the prescription then accruing, without which it is admitted prescription would have run, are stipulations in unrecorded leases and therefore can not affect the rights of plaintiff who acquired the property, in good faith, on the face of the records; and if held admissible, then it is his contention that the recitals in the leases are simple recognitions of facts and contain no specific allegations which might be construed to be an acknowledgment within the contemplation and intendment of the law.

The first question is whether or not an unrecorded acknowledgment, which was intended to interrupt prescription of a servitude then running for the nonusage thereof, can affect the rights of a third party who acquired title to the property in good faith, on the face of the records.

The district judge, in his written reasons for judgment, held that "prescription running against a servitude on property for nonusage may be interrupted by the acknowledgment of that right or servitude by the owner of the property, and this acknowledgment may be verbal or written and that it is not necessary that such an acknowledgment be recorded in order to be effective." In support of his opinion, he relied on the cases of Gillis & Co. v. Nelson and Donaldson, 16 La.Ann. 275, and Baker v. Pena, 20 La.Ann. 52.

A review of the Gillis Case shows that the servitude involved was a continuous and apparent one, which can be established by prescription and without title under the express provisions of the Revised Civil Code, Art. 765. Necessarily, if a servitude can be acquired by prescription and without title, the running of prescription for nonusage or the interruption thereof can be established by the same kind of evidence by which the acquisition of the servitude could be established, and the case therefore is not applicable to continuous nonapparent servitudes, and discontinuous servitudes, which "can be established only by a title," (Art. 766) and "can be replaced only by a title by which such servitude is acknowledged by the owner of the estate which owes the servitude, * * *" (Art. 770).

A review of the case of Baker v. Pena, supra, also shows that it is not applicable here, because in that case the defendant was a party to and had accepted a deed to real estate with a servitude imposed and acknowledged by his vendor. This Court had occasion to consider the Baker Case in Sellington v. Producers' Oil Co., 152 La. 81, 92 So. 742, and stated that the theory in the Baker Case "was that the purchaser of the land, who had the right to impose

upon it any servitude or real obligation that he might have seen fit to impose upon it, had, by his acknowledgment of the servitude or real obligation in favor of the party in whose favor it had been previously granted, imposed the obligation anew, as a condition of the new title, acquired by the purchaser of the land." (page 743.)

█ The jurisprudence of this state is well settled that third persons dealing with immovable property need only to look to the public records. Coyle v. Allen, 168 La. 504, 122 So. 596; McDuffie v. Walker, 125 La. 152, 51 So. 100; Caskey v. Standard Oil Co. of La., 181 La. 479, 159 So. 722; Beard v. Nunn, 172 La. 155, 133 So. 429; Rev. Civ.Code, Art. 2266.

In the case of McDuffie v. Walker, supra, this Court held, as is expressed in the syllabus:

"The law which declares that all contracts affecting immovable property which shall not be recorded in the parish where the property is situated 'shall be utterly null and void, except between the parties thereto' (Laws 1855, p. 335, No. 274), is clear and unambiguous. *It was intended to settle in this state the question whether knowledge, possessed by a third person of a contract affecting immovable property should be considered, so far as such person is concerned, equivalent to the registry of the contract, and it settled that question in the negative."* (Italics ours.)

█ We therefore conclude that a contract, whether intended to create or acknowledge an existing discontinuous servitude or a continuous nonapparent servitude

against which prescription was accruing, in order to affect third parties in good faith, must be recorded in conformity to the law of registry in this State.

But even if these unrecorded documents were binding upon the plaintiff as a third person, they would not help the defendant's case.

█ It is provided in our Revised Civil Code that "a right of servitude is extinguished by the nonusage of the same during ten years," Art. 789 (see, also, Art. 783) second paragraph), but "prescription ceases * * * to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed," Art. 3520. See, also, Art. 3546. Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 So. 723, 724; Sellington v. Producers' Oil Co., supra; Lewis v. Bodcaw Lumber Co., 167 La. 1067, 120 So. 859, 860; White v. Ouachita Natural Gas Co., 177 La. 1052, 150 So. 15; Frost Lumber Industries, Inc. v. Union Power Co., Inc., 182 La. 439, 162 So. 37. "But article 3520 of the Code. * * * does not mean that a mere acknowledgment of the existence of the rights of those in whose favor the servitude runs interrupts prescription. There must be more than a bare acknowledgment; *the acknowledgment must be accompanied by or coupled with 'the purpose and intention of the party making the acknowledgment to interrupt the prescription then running.'*" Bremer v. North Central Texas Oil Co., Inc. et al., 185 La. 917, 171 So. 75, 77. (Italics ours.) See, also, Frost Lumber Industries, Inc., v. Union Power Co., Inc., supra, where an

exhaustive review of the jurisprudence on the subject-matter was made.

The clause relied upon by defendants for the interruption of prescription in this case speaks for itself—it is a mere acknowledgment that at the time of the execution of the lease, the lessee (Charles A. McCoy) owned an undivided one-half interest in the "subsurface estate" of the land leased and, as such owner, was entitled to retain one-half of the royalties and rentals provided for in the lease. The acknowledgment is not accompanied by or coupled with any statement showing that "the purpose and intention of the party making the acknowledgment (was) to interrupt the prescription then accruing." There is nothing in either of the several lease contracts to show or even indicate that the owners in executing the same intended to interrupt the running of prescription in favor of lessor.

The next matter for our consideration is the contention of the defendants that in the year 1929 a certain geophysical exploration was made on the premises involved in this suit and that such exploration constituted the use of the servitude and therefore interrupted the prescription then accruing.

The record shows that a geophysical exploration was made in the vicinity of the land, but it is not shown that such exploration was made upon the property involved. Conceding, however, that the exploration was made upon plaintiff's land, this Court has repeatedly held that "to use a servitude, so as to interrupt prescription, is to use it in the manner contemplated by the grant or reservation." Louisiana Petroleum Co. v. Broussard, 172 La. 613, 135 So. 1, 2. In that case the Court said:

"This ruling finds support in articles 796 to 800, inclusive, of the Civil Code, touching the mode of use of servitudes and, in connection therewith, prescription. The servitude, in this instance, was granted for the purpose of exploring for oil, gas, and other minerals, and converting them to possession, if they were discovered, and the servitude existed for that purpose. Reference must therefore be made to the object of the grant—not for the purpose of determining whether there has been a breach of any obligation that might exist to develop, but to determine whether there has been such use as to interrupt prescription."

We therefore conclude that a geophysical exploration of the premises for the purpose of determining by scientific methods the indication of minerals underlying the surface is not a use of a servitude in the manner contemplated by the grant thereof, and consequently, such exploration does not interrupt the prescription then accruing.

The plaintiff remitted, without prejudice, his claim for damages, before the trial of the case, and it is therefore not before us for consideration.

For the reasons assigned, the judgment of the lower court is annulled and set aside, and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Dr. Ben Goldsmith, and against the defendants, decreeing that the right of servitude claimed by the defendant, Charles A. McCoy, under the act of exchange dated September 19, 1925, recorded in Conveyance

Book 215, at page 197 of the official records of Calcasieu Parish, is hereby extinguished and prescribed, and that the inscription of the mortgage recorded in Book 90, at page 471 of the mortgage records of Calcasieu Parish, be cancelled and erased insofar as it affects plaintiff's property; defendants to pay all costs of this suit.

O'NIELL, C. J., does not take part.