## ANGICHIODO v. CERAMI et al.

### No. 9865.

Circuit Court of Appeals, Fifth Circuit.
April 23, 1942.

Rehearing Denied May 9, 1942.

Philo Coco, of Marksville, La., for appellant.

Charles A. McCoy, of Lake Charles, La., LeDoux R. Provosty, of Alexandria, La., and Wade E. Couvillon, of Marksville, La., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was against Sam Cerami and persons holding mineral deeds under him, and against Amerada Petroleum Corporation, holding an oil, gas, and mineral lease, under Angelo Oddo, Cerami's mother, for a decree declaring plaintiff the owner in full title of and cancelling all acts purporting to affect the title to 80 acres of land in Avoyelles Parish.

The claim of plaintiff, as to defendant Cerami, and those holding under him was that the property was the community property of himself and wife Rosaria Cerami; that she, without his joinder, had attempted to convey the property to her mother; and that after her mother's death she had, by an ineffective act of partition which plaintiff was fraudulently induced to sign, set the land apart to her brother. The claim as to Amerada was that when Angelo Oddo conveyed to Helis, under whom Amerada holds, she had no title to convey and therefore Amerada acquired none.

The defense of Cerami was a denial of the charges of fraud and an affirmative claim that when the land was partitioned to him, it was, in law, a part of his mother's estate and if it was not, plaintiff, by his acts in connection with the succession and his joinder in the partition deeds, had ratified his wife's deed and estopped himself to claim that it did not pass title.

Amerada's defense and the defense of the mineral interest holders under Cerami was the same, and that they had bought on the faith of the public records.

Holding,[1] that plaintiff's joinder in the partition deeds in the succession of Angelo Oddo was a full and complete ratification of record of his wife's conveyance and therefore a full and complete recognition of the title in her and her estate, and that defendants who had bought from Cerami on the faith of his record title could not be effected by secret equities,[2] that is, claims not appearing of record, the trial court on motions of these defendants dismissed them from the case. Plaintiff did not appeal from that order.

The case then proceeded to trial against the other defendants, and after full hearings, there were findings: (1) that though the effect of the deed of Mrs. Oddo to her daughter was to make the property, in law, community, it was donatively intended for the protection of the daughter and in addition there was a reservation of lien to secure notes which were never paid; (2) that when the daughter deeded the property to her mother, though the deed was formally defective because of his failure to sign, plaintiff in fact assented to his

---

[1] D.C., 28 F.Supp. 720.

[2] Civil Code of Louisiana, Articles 2266, 2440; Chachere v. Superior Oil Co., 192 La. 193, 187 So. 321; Goldsmith v. McCoy, 190 La. 320, 182 So. 519.

wife's making the deed and later when the estate was settled and the partition made, he took back and cancelled the notes which had never been paid; (3) that the handling of the succession of Mrs. Oddo and the partition of it between brother and sister were fair and honest; (4) that there was no fraud, concealment, or deception practiced on plaintiff; (5) that plaintiff knew and fully understood the significance of his acts in connection with the succession and the partition deeds; (6) that they were intended to be and were recognitive of his wife's act of conveyance; (7) and that after the partition plaintiff and his wife, on their part, and Cerami, on his part, took and accepted the properties set apart to each, exercised ownership and possession, and made expenditures in and on account of them, including the expenditure by Sam Cerami of $1,800 on the property in suit.

Upon these findings in an opinion [3] exhaustively discussing the law and the facts, the district judge concluded: (1) that the property was community; (2) that the deed of plaintiff's wife to her mother, without his joinder, was therefore not of itself effective to convey title, but (3) that the verbal and written acts of plaintiff in recognition of Mrs. Oddo's title, and particularly his acts in signing the instruments of partition, had ratified his wife's conveyance, and had estopped him from asserting that he and not Mrs. Oddo and those claiming under her had title to the property.

Of plaintiff's claim that because the deeds to which his signatures were affixed were partition deeds, they were merely declaratory and not translative of ownership, the district judge declared:

"The requisite of the Codal article that the husband should join in the sale of community property to make the deed valid is one, in the opinion of the court, subject to ratification, especially when the ratification is embodied in an authentic act as in the instant case.

"We find a compliance with the Louisiana Code article previously cited. The

important legal fact is that the husband joins in an authentic act. The fact that the authentic act happens to be one of partition between the other two parties of real estate does not render ineffectual the signature of and does not diminish the authority given by the husband.

"So, in the act of partition where the language 'And to these presents also came and appeared Joseph Angichiodo, husband of Mrs. Rosaria Cerami, one of the appearers hereto, appearing herein for the purpose of aiding and assisting his said wife in said partition, and for the purpose of assenting to said partition and division in all of its parts, particulars and conditions, without any reservation, interest or claim on his part' is found, the husband there is an appearer, individually, and conveys title, if any he ever had. It is a full authentic act by him individually and, also, in his character as husband, both declarative in force and translative in effect. The partition as between Sam and Rosaria may be but declaratory, but as between Joe and the world it is translative."

As to Amerada, the district judge, though finding that when Mrs. Oddo conveyed title to Helis under whom Amerada claims, she did not convey good title, held that the subsequent proceedings in her succession culminating in the partition between the brother and sister by deed in which plaintiff joined, had under the doctrine of "after acquired title", operated to perfect the record title of Helis and to bring Amerada within the principle which ruled the case of the royalty owners under Cerami.

Appealing from the judgment against him, plaintiff is here insisting that his proof showed fraud and that the judgment should be reversed because of the erroneous findings of the trial court on that issue.

But he really relies for reversal upon claimed errors of law. As to Cerami these are: (1) that in view of Article 2272, Louisiana Civil Code,[4] requiring an act of ratification to contain "the substance of that obligation, the mention of the motive

---

[3] D.C., 35 F.Supp. 359, 367.

[4] *"Essential elements of recognitive acts.*—The act of confirmation or ratification of an obligation, against which the law admits the action of nullity or rescission, is valid only when it contains the substance of that obligation, the mention of the motive of the action of rescission, and the intention of supplying

the defect on which that action is founded.

"In default of an act of confirmation or ratification, it is sufficient that the obligation be voluntarily executed, subsequently to the period at which the obligation could have been validly confirmed or ratified."

of the action of rescission, and the intention of supplying the defect on which that action is founded," no basis exists here for a finding of ratification; (2) under Article 1320, Louisiana Civil Code,[5] and generally,[6] a partition by act of the parties operates only to sever the unity of possession. It does not create or confer on the parties any new, different or additional title or enlarge or diminish the estate; and therefore plaintiff, the owner of the title before the partition deeds were signed, remained the owner thereafter; (3) the partition deeds having the known and limited effect of dividing rather than of conferring title, no estoppel can be predicated upon their execution.

As to Amerada, they are (1) that its title both in fact and of record was only that which Mrs. Oddo held when she conveyed to Helis and neither the things that plaintiff did, nor the partition deeds he signed, afterwards, could enlarge or strengthen the title of Helis or Amerada's rights as purchaser in reliance on the record; and (2) if by his joining with his wife in the deeds to Cerami he could and did estop himself as to Cerami, Amerada could not avail itself of this estoppel because its title emanated not from Cerami but from Mrs. Oddo and the partition deeds were not in its chain of title.

We think the record amply sustains the findings of the trial court; that no fraud was at any time perpetrated on plaintiff;

that while, because of the form the transaction took, the property was in law community, the intent of the mother was donative and to protect her daughter, and in addition there was a reservation of title to secure notes which were never paid; and that when the daughter conveyed the property back with the assent of plaintiff,[7] though he refused to join in the conveyance, his voluntary signature of the partition deeds, and his acceptance and cancellation of the unpaid purchase-money notes, evidenced an intention to ratify and confirm his wife's act and to disclaim any interest in the property for himself.

■ While therefore the principle invoked by appellant, that partition deeds do not convey title to, they merely divide the possession of, property, and therefore furnish no basis for estoppel against the owner of the title who has mistakenly attempted to partition it with one having no interest in it, is sound and authoritative, the principle has no application here. For here plaintiff did not, as a partitioner, undertake to partition property with one mistakenly assumed to be a co-owner. With full knowledge of the fact that his wife, with his consent but without his joinder, had conveyed the property to her mother, that it had been administered upon as belonging to the succession of Mrs. Oddo, and that her two children were partitioning the property of that succession, he undertook to declare and did declare that he was signing the instrument for the pur-

---

[5] *"Ownership basis of right to partition.*—It is not necessary, to support the action of partition, that the coheirs, or the party commencing it, should be in actual possession of the succession or of the thing to be divided; for among coheirs and coproprietors, it is not the possession but the ownership, which is the basis of the action."

[6] Cor. Jur. Vol. 47, page 268; Davis v. Agnew, 67 Tex. 206, 2 S.W. 43; Smith v. Nelson, 121 La. 170, 46 So. 200; Kernan v. Baham, 45 La.Ann. 799, 13 So. 155; Cor. Jur. Vol. 47, pages 280, 281.

[7] Plaintiff gave this testimony:

"Q. Did your wife sell that property back to her mother? A. My wife sell back to her mama.

"Q. Why did she sell back to your mother-in-law? A. Well, she was put in bad health. I was make nothing at all on property. I no be able to pay taxes.

"Q. Did your mother-in-law sell the property back to you or your wife? A. To my wife; wouldn't sell to me.

"Q. Why? A. Because when I go into

bankrupt it be in my wife's name or I would lose altogether. I would have some property left, so she been take property so my wife she don't lose.

"Q. Did you sign the sale when Rosario, your wife, sold back to Mrs. Oddo, her mother? A. I not sign it.

"Q. Were you present? A. We have argument over this matters. My wife want to turn over and I no want to sell, and my wife tell me, 'My mama no take away from you but want to protect.' I say I know but that is handling things and I am left out. I am not discussed with about it' and she cry and I say, 'I don't want argue no more, if you want turn over to your mama go ahead.' But, I say, 'I no sign.'

"Q. Did you ever sign it? A. Never asked me because I was too much strong against it. I say, 'All right she want me to turn over place', and I say, 'All right'. You go ahead do what you want with place and I will do what I please. I no sign."

852

pose. of assisting and aiding his wife in the partition of the property as a part of the Oddo succession and for the purpose of assenting to it in all of its parts without any reservation, interest or claim on his part.

Under these circumstances we think that his act was the voluntary execution of an instrument fully translative of his title, and that by his participation in the Oddo succession proceedings, with full knowledge of all the facts and his solemn act in assenting to and joining in the final deed of partition, plaintiff effected a complete if informal ratification of his wife's prior deed and that the confirmation enured not only to the benefit of Cerami, who took and acted under the deed, but of Amerada who claimed under Mrs. Oddo. But if we are wrong in this view and for want of compliance with the formal code provisions, the partition deeds did not effect a ratification of his wife's deed to her mother so as to make Mrs. Oddo's title good, from the beginning, we think it quite clear that plaintiff's acts and deeds have raised an estoppel against him from thereafter laying claim to the property as against those who have dealt with it in reliance upon his assenting.

The evidence established that Amerada, before taking title from Helis, examined the records and found and relied upon these deeds, and that Cerami in relinquishing the town property to his sister and taking and improving the land in dispute, also relied upon them.

The judgment was right. It is affirmed.