615 So.2d 971 (1993)
ASHLAND OIL COMPANY, INC. and International Minerals and Chemical Corporation
v.
PALO ALTO, INC.
No. 92 CA 0073.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
Jay J. Szuba, Baton Rouge, for plaintiff-appellant, Ashland Oil Co., Inc., and Intern. Minerals and Chemical Corp.
*972 Allen M. Edwards, Plaquemine, for defendant-appellee, Palo Alto, Inc.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
LOTTINGER, Chief Judge.
This is an appeal by Ashland Oil Company Inc. and International Minerals and Chemical Corporation of a judgment terminating their pipeline right of way. The trial court found, on Palo Alto's reconventional demand, that the servitude had not been used within the 12-month prescriptive period provided for in the contract. Appellants seek to have their servitude enforced and the public records reformed to erase a survey error indicating that the servitude did not completely traverse Palo Alto's lands.

FACTS
In 1980, James Lawn, an employee of Ford, Bacon & Davis Construction Company, acting as agent for Ashland Oil Company and International Minerals and Chemical Corporation (joint venturers, both hereinafter referred to singularly as Ashland), began negotiating with the landowners along a 26 mile long route for a pipeline right of way, from Agrico Chemical Company's plant near Donaldsonville to Ashland's plant near Plaquemine.
Ashland's plant was the former Hercu-Fina plant, now styled the "Allemania" plant, which would produce methanol. The plant could produce approximately 100 million gallons per year when Ashland purchased it, but it was determined that a pipeline feeding carbon dioxide (CO2) to the plant could boost production to 130 million gallons per year.
During negotiations with Palo Alto's president, Arthur Lemann, Jr., Mr. Lawn learned that any right of way across Palo Alto's lands would be conditioned upon an agreement restricting use of the pipeline to the transportation of CO2, and that there would be a shortened term for the prescription of non-use of 12 months, as opposed to La.Civil Code article 753's 10-year prescriptive period.
After haggling over the price, the parties agreed to the servitude and confected an agreement providing that the servitude granted to Ashland was:
[A] non-exclusive right of way and servitude to construct, lay, maintain, operate, repair, remove and replace below ground, one single pipeline ... for the transportation of carbon dioxide in either its gaseous or liquid state, through lands which [Palo Alto] owns, situated in the Parishes of Iberville and Ascension....
Following the grant of servitude language, were numbered conditions for use of the servitude, the sixth of which provided:
This agreement shall be null and void and of no effect if [Ashland] shall fail to construct, complete and put into actual operation said pipeline described herein across said right of way within twenty-four months from the date hereof ... It is further agreed and understood that after the said pipeline shall have been constructed and put into operation, should [Ashland] fail to use the same for the purposes herein provided for a period of twelve consecutive months, then and in that event the within right of way agreement shall be terminated....
The Allemania plant and pipeline were used as planned until July, 1984, when methanol production became unprofitable for Ashland. The plant was mothballed and the pipeline was pressurized with nitrogen to prevent its corrosion during the time it was unused.
However, in order to prevent the 12-month prescriptive period from accruing, Ashland had crews at the Agrico and Allemania plants run CO2 through the line on an 11½ month basis, beginning in April, 1985. The CO2 was fed into the line at Agrico and run through it under pressure to Allemania, where it was simply vented into the atmosphere. This procedure was repeated in two additional years, until Ashland began selling Agrico's CO2 to Georgia Gulf via the pipeline in 1988 and, later, again began to produce methanol in January, 1989.
*973 Ashland, additionally, visually inspected the route of the right of way to ascertain that no encroachments or potentially disruptive activities occurred on or near the servitude and pipeline. Ashland considered these activities, and the nitrogen injections, maintenance in compliance with the language of the servitude grant. Ashland contends that all of these activities sufficiently constitute the specified "use" of the pipeline such as would interrupt the running of the 12-month prescriptive period.
ASSIGNMENTS OF ERROR
Ashland assigns as error the trial court's action in:
1. Permitting parol evidence to be admitted to explain the terms, provisions and conditions of a written contract which was, on its face, unambiguous;
2. Finding that the servitude at issue had not been "used" as provided by the written agreement and by the intention of the parties;
3. Adding terms to the contract which were not contained within the agreement and making performance of the contract more onerous including that the gas transported by the pipeline had to be used for production of methanol or some other purpose, the use of the pipeline was dependent upon the operation of the plant, that certain quantities of certain types of gas had to be transported through the pipeline;
4. Shifting the burden of proof concerning the occurrence of a resolutory condition in the contract from the plaintiffs to the defendants;
5. By failing to reform the Servitude Agreement to reflect the intention of the parties to show that the servitude was to extend completely across the lands of Palo Alto.

DISCUSSION
We will consider assignments of error 1 and 2 together as each is intimately involved with resolution of the other. Ashland asserts that the trial court erred in looking beyond the language of the contract granting the servitude to determine that the intent of the parties required Ashland to do more than it did to use its servitude.
It has long been the law in this state that to use a servitude, so as to interrupt prescription, requires one to use it in the manner contemplated by the grant of the servitude. Continental Group, Inc. v. Allison, 404 So.2d 428, 437-438 (La.1981) (on rehearing), cert. denied, 456 U.S. 906, 102 S.Ct. 1753, 72 L.Ed.2d 163 (1982); Lynn v. Harrington, 193 La. 877, 192 So. 517, 518 (1939); Goldsmith v. McCoy, 190 La. 320, 182 So. 519, 523 (1938); Louisiana Petroleum Co. v. Broussard, 172 La. 613, 135 So. 1, 2 (1931). Reference must therefore be made to the object of the grant, not for the purpose of determining whether there has been a breach of any obligation, but to determine whether there has been such use as to interrupt prescription. 135 So. at 2-3.
This directive need not be viewed as an exception to the rule that parol evidence is inadmissible to negate or vary the contents of this contract. See La.Civ.Code article 1848. Where, as here, the language of the contract granting the servitude is broadly and generally worded, a determination of the object of the grant does not depend upon the admission of parol evidence, because it can readily be seen that any pipeline servitude to transport gas from one location to another must have as its purpose a use other than that availed of here. Cf. Robert Investment Co., Inc. v. Eastbank, Inc., 496 So.2d 465 (La.App. 1st Cir. 1986). Therefore, we find, even if the trial court did erroneously admit and rely upon such evidence, that use of parol evidence in this case was irrelevant and harmless.
Accordingly, in Broussard, the Court stated that in the case of a mineral servitude, where the exploiting, though begun, has been stopped or abandoned at a depth at which there was no reasonable hope of discovering minerals in paying quantities, the use is not such as to interrupt prescription. 135 So. at 3. In Goldsmith, the Court concluded that geophysical exploration of the premises for the purpose of *974 determining the indication of minerals underlying the surface will not interrupt prescription. 182 So. at 523. In Harrington, the Court did find that prescription had been interrupted where a mineral lessee drilled carefully, taking numerous core samples for testing, and stopped drilling only when he had reached the frontiers of geological knowledge circa 1938. The Court specifically noted that the well "was not drilled as a mere gesture by the mineral owners to preserve a servitude, but by the owner of a mineral lease under an obligation to substantially develop with due diligence." 192 So. at 518.
It is important to note, that although these decisions were based on former La. Civ.Code articles 796-800 (repealed in 1977), the articles relied upon pertained to use of a servitude that was less than allowed or called for in the title creating it. Thus, they applied where the manner of use was inconsistent with a broadly or generally worded grant of a servitude. See La.Civ.Code article 759, Comments (b) and (c); La.Civ.Code article 761.
We can see, therefore, that Ashland erroneously relies upon the following language, found in Professor Yiannopoulos' treatise on predial servitudes in 4 Louisiana Civil Law Treatise 449:
If the title does not establish an exclusive manner of use, the use of the servitude in a different manner from that which is designated or appropriate ought to interrupt the prescription of nonuse.
Ashland asserts that this language supports its contention that any use of the pipeline involving the running of CO2 from one end of the pipeline to the other is use of the servitude comporting with the object of the grant of the servitude. However, this sentence must be read in conjunction with the sentence preceding it, wherein Professor Yiannopoulos states:
The use of a servitude for over ten years in a manner different from that which is appropriate for the servitude ought to result in extinction of the original servitude by nonuse, if the title establishes an exclusive manner of use. (Emphasis added)
Id.
In this case the title did establish an exclusive manner of using the pipeline; it is "for the transportation of carbon dioxide in either its gaseous or liquid state, through lands which [Palo Alto] owns." (Emphasis added). The servitude is not used, as Ashland asserts, merely by running CO2 through the line. This would be "a mere gesture by the [pipeline] owners to preserve a servitude," Lynn v. Harrington, 192 So. at 518, which practice has been repudiated in our law. Thus, we find, as did the trial court, that Ashland did not use its servitude for at least twelve consecutive months between July, 1984, and January, 1989. This finding compels the conclusion, under the contract, that the servitude was prescribed for nonuse.
This determination obviates consideration of Ashland's third, fourth, and fifth assignments of error, and we pretermit them.[1]

CONCLUSION
Therefore, the judgment of the trial court is AFFIRMED at appellants' costs.
AFFIRMED.
FOIL, J., dissents and assigns reason.
FOIL, Judge, dissenting.
I disagree with the majority in this case. The majority affirms the trial judge in holding that the servitude ended because of prescription, in that it was not used in the manner contemplated by the grant of the servitude. Ashland, the servitude owner, in 1980, at the outset of the servitude, transported CO 2 through the pipeline servitude to its plant to produce methanol. Ashland stopped producing methanol at the plant in 1984. From that time until 1989, Ashland ran CO 2 through the line approximately once each year to keep the servitude *975 alive, but the CO 2 was merely vented into the atmosphere at the end of the line rather than used to produce methanol. Ashland began producing methanol again in 1989.
The servitude agreement stated the servitude would terminate if Ashland failed to use it "for the purposes herein provided" for a period of 12 consecutive months. The purposes of the servitude specified in the contract of servitude were to "lay, maintain, use, and to transport gas through the lands" of Palo Alto. There was no requirement that Ashland was to continue producing methanol in order to keep the servitude alive.
I would reverse the trial court's finding that the servitude had prescribed, and remand the case for further proceedings.
NOTES
[1] In an unpublished opinion entitled Lemann & Thibaut, Inc. versus International Minerals & Chemical Corporation and Ashland Oil, Inc., et al., No. 91 CA 0896, rendered July 14, 1992, writ denied, 606 So.2d 545 (La.1992), another panel of this court affirmed the same result under virtually the same facts.