## LOGAN v. UNION SULPHUR CO.
### No. 2840.

District Court, W. D. Louisiana, Lake Charles Division.

June 27, 1939.

Pujo, Hardin & Porter, of Lake Charles, La., for plaintiff.

Liskow & Lewis, of Lake Charles, La., for defendant.

DAWKINS, District Judge.

This is an action in jactitation or slander of title, wherein it is alleged that the defendant is claiming to be the owner of the mineral rights in a certain described tract of land in Calcasieu Parish. Plaintiff is a citizen of this State and the defendant is a corporation under the laws of New Jersey. The petition refers to certain specific documents or transfers of record as constituting the slander, and prays that defendant be required to disclaim any interest in said mineral rights or "to assert herein such rights as defendant may claim against said property", and that said transcriptions be cancelled and for damages in the sum of $3500.

Defendant, in its answer, disputes the claim of plaintiff and prays that it be adjudged the owner of three-fourths (¾) of the minerals under and in said lands.

The jury has been waived and the case submitted upon a stipulation of facts, together with certain documentary evidence offered and referred to therein.

The Court therefore finds the facts accordingly as follows:

Sidney J. Ory, common author in title of both plaintiff and defendant, was the owner in fee simple of the following described property:

Lot Four (4) or the fractional Southwest quarter of Section Eleven (11), Township Nine (9) South, range Eight (8) West.

At this time plaintiff is the admitted owner of the fee of said land and one-fourth (¼) of the minerals, but otherwise, the title is subject to such rights to the minerals as are vested lawfully in the defendants.

Although the petition claims a greater interest in the minerals, which claim was disputed by the defendant in its answer, and the interests so claimed are discussed at length in the briefs filed on October 14 and 29, 1938, respectively, in the stipulations filed December 5, 1938, it is recited that the "defendant is owner of nine-sixteenths (9/16) of the mineral rights in said land, having acquired same through mesne conveyances from Sidney J. Ory and Anthony W. Sale." Further: "that the ownership of the remaining three-sixteenths (3/16) of the minerals and mineral rights in said lands is the only question in dispute in this case, plaintiff having abandoned his claim to the eight-sixteenths (8/16) mineral interest reserved by Sidney J. Ory and acquired by mesne conveyances;" and it is accordingly so found.

It is further found, as stipulated, that defendant's title to the mineral and mineral rights in the land, to the extent found to exist, has not been lost by prescription. The facts are further found as follows:

On April 11, 1928, John Paul, Dr. H. B. Harper, and Dr. G. E. Gardiner were the owners of the said tract of land, "including seven-sixteenths (7/16) of the minerals and mineral rights therein;" and on the same day, by warranty deed, conveyed them to Calcasieu Realties Inc., in which it was provided: "the vendors herein hereby reserving three-sixteenths (3/16) of all of the oil, gas and other minerals, in, or under the above described land." No language was used in the deed referring "to any prior mineral reservation."

On March 11, 1929, Calcasieu Realties Inc. sold the land to the plaintiff, W. B. Logan, by deed in which the property conveyed was referred to as "being the same property acquired by present vendor from John Paul, Dr. H. B. Harper, and Dr. G. E. Gardiner, as per act of sale dated April 11, 1928 and recorded in book 233 at page 206 of the conveyance records of Calcasieu Parish," which was the same

deed in which the individuals mentioned reserved "a three-sixteenths (3/16) interest of all the oil, gas and other minerals, in, on or under the land in question."

On April 22, 1926, prior to the acquisition by Calcasieu Realties, Inc., the then owner, Sidney J. Ory, common author in title of both plaintiff and defendant, by duly recorded deed, had sold the land in question to Anthony W. Sale, Homer B. Harper, John Paul and Germanius E. Gardiner, which deed contained the following provision:

"The vendor herein especially reserves and excepts from this transfer an undivided one-half (½) of all oil and other minerals underlying or in any manner connected with said described lands, this reservation being taken full cognizance of and acceded to by said vendees * * *.

"The reservation by vendor of an undivided one-half of all oil and other minerals underlying or in any manner connected with the above described property is subject to two (2) leases thereon * * *. Should said leases expire or become forfeited vendor will still reserve and retain and does hereby reserve and retain an undivided ½ interest in all the oil and other minerals underlying said lands to the exclusion of all parties whomsoever * * *."

On May 3, 1926, Anthony W. Sale, by deed duly recorded, sold to W. G. Schmale "an undivided one-eighth (⅛) interest" in the land in question, wherein it was recited: " * * * this transfer is subject to all mineral reservations presently held and owned by Sidney J. Ory, but includes one-half (½) of all mineral rights owned by vendor."

On December 10, 1926, Sale and his wife, by deed duly recorded, sold to Dr. Harper an undivided one-eighth (⅛) interest in the lands in question, wherein it was provided: "subject to the mineral and royalty reservations already affecting said property and also with the reservations on the part of vendors of all minerals and mineral rights connected with or appertaining to said conveyed property which is presently held and owned by vendors or either of them aside from and subject to such reservation as presently exists against said property in favor of other parties."

On April 7, 1928, Schmale, who had previously acquired a one-eighth (⅛) interest in the lands "and a one-sixteenth (1/16) interest in the minerals" from Sale, conveyed the same to Paul, Harper and Gardiner, describing the interest so conveyed as "an undivided one-half (½) interest of an undivided one-fourth (¼) interest or an undivided one-eighth (⅛) interest in the land in question."

When Paul, Harper, and Gardiner sold to plaintiff's vendor, Calcasieu Realties, Inc., on April 11, 1928, with a "reservation of a three-sixteenth (3/16) interest," the land in question was wholly owned by the said vendors "but on the date of and immediately prior to date of said sale, the mineral interest in said land as shown by duly recorded conveyances and reservation of minerals were owned as follows:

"By Sidney J. Ory............8/16
" Anthony W. Sale.........:1/16
" John Paul ⎫
H. B. Harper ⎬..........7/16"
G. E. Gardiner ⎭

The defendant acquired the eight-sixteenths (8/16) or one-half interest of the widow and heirs of Ory and the one-sixteenth (1/16) interest of Anthony W. Sale, subsequent to the deed from Paul, Harper and Gardiner dated April 11, 1928, to Calcasieu Realties, Inc., in which the three-sixteenths (3/16) interest was reserved by these vendors and also subsequent to the time Calcasieu Realties, Inc., sold to plaintiff.

Subsequent to the said deed of April 11, 1928 by Paul, Harper and Gardiner to the Calcasieu Realties, Inc., containing the three-sixteenths (3/16) reservation, and subsequent also to the later transfer to Logan on March 11, 1929, the said Paul, Harper and Gardiner "executed in favor of the defendant deeds sufficient in form to convey unto defendant said three-sixteenths (3/16) of the minerals in said land," if they were the owners.

As stated above, while the pleadings raise and the briefs discuss other issues, the agreement and stipulation of facts of December 5, 1938 eliminate everything but the three-sixteenths (3/16) interest involved in the deed by Paul, Harper and Gardiner to Calcasieu Realties, Inc., dated April 11, 1928, and the title of defendant to the nine-sixteenths (9/16) acquired from the widow and heirs of Ory and from Anthony W. Sale, is recognized.

At the time of the sale to the Calcasieu Realties Inc., Paul and his associates were the owners of the fee of the lands, and seven-sixteenths (7/16) of the minerals and in this deed of conveyance, it was stipu-

lated that: "the vendees herein hereby reserve three-sixteenths of all the oil, gas and other minerals, in, on or under the above described land."

■ Leaving out of consideration for the present, the condition of the title to the minerals as appeared from the records wherein Ory and Sale became vested with the ownership of nine-sixteenths (9/16), the defendant or any third person acquiring from Paul, Harper and Gardiner title to the three-sixteenths (3/16) of the minerals would have taken that fractional part of the whole, since regardless of the equities between Paul, his associates and the Calcasieu Realties, Inc., such a purchaser would have been entitled to rely upon the records which clearly show that this three-sixteenths (3/16) still remained in those vendors. At the time of the sale to the Realties Company, according to the record, they owned a seven-sixteenths (7/16) interest in the minerals, which, of course, in view of the prior disposition of the nine-sixteenths (9/16) involved in the Ory and Sale title, left only four-sixteenths (4/16) which passed to it since three-sixteenths (3/16) were reserved. This was all that they could lawfully convey to the Realties Company, if, as appears to have been clearly expressed, it was intended by both parties to this transfer that these vendors were to retain a three-sixteenths (3/16) interest in the minerals. We are not concerned at this time with the rights as between the Realties Company, plaintiff's vendor and Paul, and his associates, except to the extent the deed between these parties conveyed notice to defendant and its vendors of the acquisition of a lawful right or title by plaintiff and his vendor in the minerals adverse to that of defendant. As between third persons the recorded titles are absolutely conclusive and controlling. R.C.C. Art. 2015.

■ The Calcasieu Realties, Inc., and plaintiff were bound to know, from the records, which knowledge the law imputed to them, that Paul and his associates had acquired only seven-sixteenths (7/16) of the minerals. When the defendant came to purchase the three-sixteenths (3/16) reserved in that deed, it was not concerned with the fact that, in selling to the Realties Company, Paul and his associates had said nothing about owning only seven-sixteenths (7/16) of the minerals, but purportedly attempted to transfer an indefeasible title to the whole property, less only the three-sixteenths (3/16) interest in the minerals which they reserved. It was entitled to stand upon the records and the conclusive notice which they gave to plaintiff and his vendor. See R.C.C. arts. 2264, 2266; United Gas Public Service Co. v. Roy et al., La.App., 147 So. 705; Loranger v. Citizens' Bank, 162 La. 1054, 111 So. 418; McDuffie v. Walker, 125 La. 152, 51 So. 100; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Coyle v. Allen, 168 La. 504, 122 So. 596; Caskey v. Standard Oil Co., 181 La. 479, 159 So. 722; Beard v. Nunn, 172 La. 155, 133 So. 429.

■ It is contended by counsel for plaintiff, in effect, that, since all were bound to know of the titles which the record disclosed, when the defendant came to purchase from Paul and his associates, that record showed that they had executed a warranty deed to the Realties Company which purported to convey all interest in the property except the three-sixteenths (3/16) reserved, and that therefore the legal effect was to transfer all of the title and since this was not sufficient to vest in their vendee, the Realties Company, thirteen-sixteenths (13/16) and still leave three-sixteenths (3/16) in the vendors, they must be held to have transferred the entire seven-sixteenths (7/16) which were actually owned and to have retained nothing for themselves. As between the parties to the transaction, that contention would probably be sound; but can it be said to apply to third persons in the position of defendant? I think not. Between the parties, principles of law, as well as of equity are controlling. Under the State law, warranty is presumed unless expressly waived, and the purchaser may hold the seller for such loss or damages as he suffers upon failure of the title; and equity would compel the vendor to permit the vendee to enjoy the benefits of such interest as was actually owned and estop the former as against the latter, from claiming to his prejudice. But here, when the defendant came to purchase from Paul and his associates, the record disclosed a title in them (reserved) to three-sixteenths (3/16) of the minerals which the plaintiff's immediate vendor, the Realties Company, had recognized in the fee deed by which it acquired, and in my opinion the situation as to the defendant is no different to what it would have been had the sale been all in fee and the Realties Company had immediately transferred the three-sixteenths (3/16) interest to Paul and his associates.

Instead, it agreed that it be retained or reserved and the purchaser on the faith of the record, I think, could acquire free from any equities between the Realties Company and its vendor. There should be judgment for defendant recognizing it as the owner of a three-fourths interest in the mineral rights in the property in question and recognizing a one-fourth interest thereto in the plaintiff.

Plaintiff should pay costs.