No. 3982

Second Circuit

(Second Division)

## CRICHTON CO., LTD., v. SMITH

(November 18, 1931. Opinion and Decree.)

Drew & Richardson, of Minden, attorneys for plaintiff, appellee.

Stewart & Stewart, of Minden, attorneys for defendant, appellant.

CULPEPPER, J. On September 8, 1919, the plaintiff, Crichton Company, Ltd., sold and conveyed to J. H. Long, partly for cash and partly on terms of credit, represented by vendor's lien and mortgage, a tract of several hundred acres of land lying in the parish of Webster. Plaintiff reserved one-half of all oil, gas and other minerals in and under the land, with right of egress and ingress for purposes of exploring, mining and drilling for and removing same. Purchaser, in turn, sold the land to L. M. Grigsby and W. J. Monzingo on the same day he bought it, for the same price and on the same terms on which he had purchased it, except as to cash payment, the purchasers assuming the payment of the notes given by Long

to plaintiff. At the close of the description in this deed is shown the following clause: "* * * less one-half of the minerals which were reserved by Crichton Co., Ltd., in deed to vendor herein."

Under these conveyances, title to the minerals in and under these lands became vested, one-half in the plaintiff and one-half in Grigsby and Monzingo.

On June 16, 1924, said plaintiff, Grigsby and Monzingo for a cash consideration of $380 leased to W. B. Smith, the defendant the oil and gas in and under 91 acres of the lands conveyed by plaintiff to Long. While the mineral lease is not in the record, its execution and existence was alleged by plaintiff and admitted by defendant. The record does not show for what period of time the lease was given. On the 19th of June, 1924, W. B. Smith, lessee, executed to the lessors, the following obligation:

"Whereas, Crichton Co., Ltd., L. M. Grigsby and W. J. Monzingo did on June 16th, 1924, execute an oil and gas lease in favor of W. B. Smith, covering the following described property, to-wit:
(Here follows description of the 91 acres) "* * * for the consideration of three hundred eighty dollars, cash, the receipt of which is hereby acknowledged, and
"Whereas, this 91 acres is contiguous to and forms a part of the block of acreage generally known as the Stack & Egger Block, it is agreed by the vendee of the lease, W. B. Smith (who is now the owner of the Stack & Egger block of leases), that in the event he, the said W. B. Smith, or his heirs, successors and assigns, shall fail to complete a well producing oil in commercial quantities * * * or a gas well producing gas in commercial quantities, on some part of said block of leases herein referred to as the Stack & Egger block of leases, before the expiration of said leases, that he, the said W. B. Smith, his heirs, successors and assigns, shall and will pay unto the said Crichton Co., Ltd., W. J.

Monzingo and L. M. Grigsby, an additional sum of Five Hundred Thirty Dollars ($530.00). * * *

"(Signed) W. B. Smith.
"Attest:
"C. S. Allen
"L. F. Stephens."

The instrument is not signed by the obligees named in it. It was authenticated by affidavit of one of the witnesses, and recorded in February, 1926, in the conveyance records of Webster Parish.

On February 4, 1926, plaintiff brought foreclosure suit against Grigsby and Monzingo upon certain of the unpaid series of notes they had assumed at the time they purchased from J. H. Long, and, after a judgment was had ordering the lands mortgaged to be sold in settlement, the lands purchased (which embraced the 91 acres covered by the gas and oil lease) were sold at public auction June 25, 1927, to T. A. Glass.

On March 22, 1928, W. J. Monzingo and L. M. Grigsby for $50 cash executed a formal written release to W. B. Smith releasing him from any obligations to them arising out of the obligation of June 19, 1924, hereinabove shown, and authorized the clerk of court of Webster parish to cancel and erase said agreement or bond in so far as their interests were concerned.

Plaintiff brought this suit on April 15, 1930, against W. B. Smith to enforce collection of the full amount named in the instrument of June 19, 1924, viz.: $530, with the alternative plea and prayer that in event the court should not give plaintiff judgment for the full $530, then for one-half the amount, or $265, with legal interest from judicial demand.

There was judgment in favor of plaintiff for $265 with interest, and defendant appealed. Plaintiff has not answered the appeal.

Plaintiff alleges and defendant admits that defendant failed to bring in a well producing oil or gas in commercial quantities on any of the lands embraced in the Stack & Egger block of leases during the life of the leases thereon. Because of this failure on the part of Smith, and because the leases had expired, plaintiff alleged Smith is indebted to plaintiff under the June 19, 1924, obligation, in the sum prayed for in the petition.

Defendant admits the execution of the document, and in his testimony on witness stand admitted he had failed to bring in a well on any of Stack & Egger block as alleged, but denies that he is in any way obligated to plaintiff thereby. Previous to filing answer, defendant filed an exception of no right or cause of action, which was referred to the merits. Defendant still contends that the exception is good and should have been sustained by the lower court, because the document sued on was executed by defendant without consideration, and hence is a nudum pactum.

There was no evidence either oral or documentary offered by either plaintiff or defendant to explain why defendant executed the document sued on. Plaintiff did not allege, nor did it prove that defendant reaped any gain or advantage by executing the document. No evidence was offered to show that plaintiff gave defendant anything, tangible or intangible. No right, privilege or advantage, which defendant did not already have under the lease which plaintiff, Monzingo and Grigsby had given him only three days before, was disclosed. Plaintiff and his co-lessors did not sign the document. The docu-

ment, however, refers to the lease and stipulates that W. B. Smith or his successors or assigns (not of the lease plaintiff and his co-lessors had just executed to defendant, but of the block of other leases referred to) shall pay to plaintiff and his co-lessors "an additional sum of Five Hundred Thirty Dollars." The document sued on evidently grew out of something in connection with the lease of June 16th and was evidently related in some way to the prospect of obtaining oil on the adjoining leases, which would operate advantageously to the defendant. While the testimony is silent as to what this advantage was, the legal presumption is that it existed.

Plaintiff made no pretension that any extension of time was intended to be given or was given on the lease, nor that any advantage would accrue or did accrue to defendant as a result of the execution of the obligation. Nor has defendant shown that no advantage or additional rights accrued to him by his signing such a document.

Neither counsel for plaintiff nor defendant have sought to explain the reason for the execution of the document. Counsel for defendant, however, contends that the document on its face fails to show any consideration; that the $380 paid for the lease already executed was in full consideration for all the rights and privileges expressed or given the lessee therein. We do not have a copy of this lease before us, hence are unable to say just what is therein recited. While an obligation without a cause, or with a false or an unlawful cause, can have no effect (C. C., art. 1893), one is none the less valid, though the cause be not expressed (C. C., art. 1894). The true consideration, if not expressed, can always be shown. Moore v. Pitre, 149 La. 910, 90 So. 252. It is like-

wise true that the want of consideration can always be shown. The same rule works both ways, depending upon the party whose interest it is to show its existence or non-existence. Furthermore, a just consideration or cause is always presumed and understood unless the contrary be proved. Read v. Hewitt, 120 La. 290, 45 So. 143. And the burden of proof to show want of cause or consideration is as in this case, upon the defendant. Pack v. Chapman, 16 La. Ann. 366; Martin v. McClosky, 155 La. 604, 99 So. 477.

Defendant must have had some interest to conserve in connection with the lease he had obtained from plaintiff, Monzingo and Grigsby, otherwise the presumption is that he would not have signed this obligation. It is not shown in the document what that interest was. Nevertheless, that fact did not of itself make the obligation invalid. If, however, it be a fact that Smith did not have some object or interest to conserve, the burden was upon him not only to allege it, but to prove it. He alleged lack of consideration in his answer, and therefore admits it to be a necessary defense, but he has failed to prove it. The document itself, which was filed in evidence by plaintiff and relied on by plaintiff, does not, in our opinion, evidence a lack of consideration. It merely fails to show affirmatively its existence. Under the law a just and true consideration is presumed until it be shown by defendant that none existed.

"A valuable consideration may, in general terms, be said to consist either in some right, interest, profit, or benefit accruing to the party who makes the contract, or some forbearance, detriment, loss, responsibility or act, or labor or service on the other side; and if either of these exist, it will furnish a sufficient valuable consideration to sustain the making or endorsing of a promissory note in

favor of the payee or other holder."

Benner v. Van Norden, 27 La. Ann. 473; Story on Promissory Notes, sec. 186.

The document executed by defendant Smith as shown by its preamble, indicates, if it does not express, that defendant had some interest to conserve in undertaking this obligation, and if he did not have, he should have shown it. This he failed to do and therefore a cause of action is shown, hence the presumption that a consideration actually existed still stands.

As to who is entitled to enforce the obligation sued on, and for what amount, we have this to say—that plaintiff is one of three obligees named in the instrument sued on. In the absence of assignment, it is presumed to be the lawful owner of this undivided one-half interest. The evidence shows that plaintiff owned a one-half interest in the minerals at the time the lease was executed, hence the interest conveyed by it in the lease is shown to have been a one-half. Therefore, in the absence of proof to the contrary, plaintiff would be entitled to a like proportion of the consideration for which the lease was given. Monzingo and Grigsby, it is true, released defendant from the payment of their interest in the obligation, but this could not have the effect of releasing defendant from the obligation flowing to plaintiff. Crichton Co., Ltd., owned one-half of the mineral rights and the other two lessors the other half. If the other two saw fit to release their interest in the obligation it certainly would not follow that such release operated to extinguish the rights of plaintiff.

The court is of the opinion, for the reasons assigned, that the judgment of the lower court is correct, and it is therefore affirmed.

DREW, J., recused.