**TEXAS CO. v. COUVILLON et al.**

No. 14841.

Court of Appeal of Louisiana. Orleans.
April 6, 1936.

For former opinion, see 160 So. 839.

Sanders, Baldwin, Haspel & Molony and Robert Weinstein, all of New Orleans, for appellant.

Weiss, Yarrut & Stich and Gerald Netter, all of New Orleans, for appellee.

McCALEB, Judge.

This rehearing was granted because of existing doubt in our mind regarding the soundness of the conclusions of law expressed in our former opinion when applied to the facts of the case.

The previous result was founded upon two grounds: (a) Want of consideration for the signing of the guaranty agreement by Thomas; and (b) assuming that consideration was present, the plaintiff had failed to investigate Couvillon's credit, within a reasonable time, and such inaction on plaintiff's part had the effect of releasing Thomas, the guarantor. We shall again discuss these questions in their order.

Before embarking upon an examination of the correctness of our holding that there was no cause for the giving of the guaranty, it is well to dispose of a barrier raised by counsel for plaintiff in his oral argument and brief. It is contended that the signing of an obligation is necessarily presumptive of consideration, and that the fact that one enters into an agreement is indicative of a just and valid cause for his undertaking. The weight of this statement may not be denied. It is not only engendered from wholesome thought, but is of long establishment in our law and jurisprudence. R.C.C. arts. 1893, 1894 and 2232; Barrow v. Cazeaux, 5 La. 72; Pack v. Chapman, 16 La.Ann. 366; Read v. Hewitt, 120 La. 288, 45 So. 143; Martin v.

McCloskey, 155 La. 604, 99 So. 477; Crichton Co., Ltd., v. Smith, 18 La.App. 567, 137 So. 643, and Tremont Lumber Company v. Powers & Critchett Lumber Company, 173 La. 937, 139 So. 12.

From this premise, counsel argues that a plea of want of consideration may not be urged by way of an exception of no cause of action, but that it is permissible only when raised as a special defense. This proposition is not meritorious. It is apparent that a petition may, upon its face, be framed in such manner as to show a lack of consideration.

Likewise, it is unsound to assert that want of consideration must be pleaded specially. Lack or failure of consideration refers to the very existence of a legal obligation. It should not be confused with defenses which confess the obligation, but seek to sustain its extinguishment, such as payment or novation. It is well settled that defenses of the latter class must be specially pleaded. On the other hand, a defense of exoneration because of invalidity or illegality of the obligation may be presented by a general denial of liability.

In the instant case, we find that the petition shows that Thomas guaranteed the obligation of Couvillon. The guaranty agreement is annexed to and made part of the petition. An exception of no cause of action admits all facts well pleaded. Hence, under the exception, Thomas concedes the execution of the obligation, and there is a presumption flowing from the fact of his engagement that there was a valid cause existing as to Couvillon and himself, unless there are other allegations which necessarily demonstrate that such was not the case. The petition is barren of any statement which would of itself rebut the presumption of consideration.

But we perceive that Thomas, in his answer, has denied any indebtedness on the guaranty, and that he further pleads that said guaranty, signed by him, is invalid. The reasons for his claim of invalidity are not specifically set forth. Yet, it was not necessary for him to plead in detail the cause which resulted in the alleged illegality of the undertaking, and the door was open to him to defeat recovery upon any lawful ground. However, in adopting this position, the burden of proof to show lack of consideration was upon Thomas, because the admitted fact of the execution of the guaranty agreement raised a presumption of lawful consideration. See Martin v. McCloskey, supra, and other cases above cited.

We must, therefore, decide whether the evidence presented exhibits a lack of consideration for the execution of the guaranty agreement by Thomas, bearing in mind that consideration is presumed and that the burden is upon Thomas to rebut this inference.

It may be observed that, in our former opinion, the analysis of the evidence relating to this question was probably approached from the opposite point of view. Be that as it may, we find that Thomas testified, on cross-examination, at the first trial, that he or his family were the owners of property on Broad and Poydras streets, which previously had been operated by his uncle, Mr. H. H. Thomas, as a gasoline service station, under an agency contract with the Texas Company; that Couvillon came to him (Thomas) for the purpose of renting the property as a gasoline station, and that Couvillon had an agency agreement with the Texas Company. He further says that the Texas Company sent Couvillon gasoline, and that three or four days later a salesman in its employ, accompanied by Couvillon, called upon him (Thomas) and stated that the plaintiff would have to be guaranteed for the payment of the initial shipment of gasoline to Couvillon until such time as Couvillon's credit could be established with the plaintiff. Thomas further asserts that, although he had been acquainted with Couvillon for only three days, he (Thomas) consented to guarantee the initial consignment of gasoline, in order to help Couvillon out. He further testifies that Couvillon operated the gasoline station for about three months, after which time Couvillon became dissatisfied.

The date upon which Thomas agreed to guarantee the payment of the initial consignment of petroleum to Couvillon is not disclosed by his testimony, but we conclude that Thomas verbally agreed to guarantee the payment of the gasoline about the time of its delivery, and close to the time when plaintiff entered into an agency contract with Couvillon, because Thomas testifies that he had known Couvillon for only three days when he made the guaranty agreement. Moreover, it seems unnatural that a person of normal intelligence would sign an obligation to pay the debt of another except from motives emanating from friend-

ship or kinship, or because it was to his benefit and interest to do so. Now, Thomas says he signed this obligation for a comparative stranger, whom he had known for only three days, because he (Thomas) wanted to help Couvillon out. We observe that Thomas' statement is best viewed in the light of his own interest, in having his property rented to the Texas Company or to Couvillon, or to any other tenant who might be able to earn enough to pay a fair monthly rental therefor. It now strikes us forcibly that Couvillon would have never been able to obtain the agency contract from the Texas Company unless he had some responsible person to guarantee the payment of the initial consignment of gasoline and oil. Without the agency contract from the plaintiff, carrying with it the advancement of 1,000 gallons of gasoline and 30 gallons of motor oil, Couvillon could not have engaged in business on Thomas' property. In the absence of these considerations, Thomas would not have been able to rent the property to the Texas Company or to Couvillon.

We mention the fact, of the lease being made to the Texas Company or to Couvillon for the reason that the record is not clear on this point. The petition alleges that, by virtue of the agency contract, Couvillon was appointed agent for the Texas Company at its service station on Broad and Poydras streets. The assistant credit manager of the plaintiff company, one Dell, testified that the property was leased to the Texas Company by Thomas, but the lease not being offered in evidence, we are unable to say whether the same was granted to the Texas Company or to Couvillon.

The fact that the guaranty agreement was not actually placed in writing until November 17, 1930, cannot have the effect of diminishing the validity of the consideration therefor.

Our present view that there was a consideration for the guaranty agreement is amplified by the testimony of Dell to the effect that, at the time the plaintiff made the initial delivery to Couvillon, Thomas verbally agreed to give plaintiff a guaranty for its payment.

. As we now hold that Thomas has failed to rebut the presumption of valid consideration, and further being of the opinion that Thomas received value for the execution of the guaranty agreement in favor of the plaintiff, the cases of Watkins Co. v. Jones et al., 171 La. 467, 131 So. 301, and W. T. Rawleigh Company v. Toms et al. (La.App.) 153 So. 595, relied upon by us in our original opinion, are inapplicable.

■ This leads us to the discussion of the second ground upon which our former opinion is based. We held that plaintiff's inaction in failing to timely investigate Couvillon's credit barred recovery. But this holding was premised upon a misconception of the evidence, for the opinion states that "many months elapsed and Couvillon was never placed upon the credit list. * * *" The fact is that Thomas testified that Couvillon operated the gas station for only three months. Dell, plaintiff's witness, testified that the last delivery of gasoline made by plaintiff to Couvillon was in the latter part of December, 1930. This testimony, when connected to the sales account offered in evidence, which shows the last sale of gasoline to be on December 31, 1930, and with the testimony of Thomas, clearly demonstrates that Couvillon operated the gas station for a period of not more than three months. Dell further explained in his testimony that due to certain difficulties encountered by the plaintiff in obtaining the proper lease of the property from Thomas, which had to be approved by plaintiff's office in Houston, Tex., information concerning Couvillon's credit rating was deferred.

It is now obvious to us that the spirit and intention of the guaranty agreement was that Couvillon was actually being granted an agency contract on trial. If Couvillon, with the advancement to him of 1,000 gallons of gasoline and 30 gallons of motor oil, could make sufficient sales over a reasonable length of time to convince the plaintiff that he had established a steady business, then plaintiff would have granted credit to him, with the resultant release of Thomas from liability on the guaranty agreement. On the other hand, during the early and uncertain stages of Couvillon's venture in the oil business, the plaintiff was unwilling to give him credit, and insisted upon the guaranty to protect it from loss. We do not believe that a 3-month period of trial is an unreasonable time to withhold judgment on such a credit risk in view of all of the circumstances of the case.

■ There still remains for consideration another point raised by Thomas. He asks us to finally hold that the cash payments on purchases made by Couvillon should be imputed to the gasoline and oil which were delivered on initial consignment and guar-

158

anteed by Thomas. This contention does not impress us. The guaranty agreement specifically contracts for liability as to the particularly described initial consignment of gasoline and oil. It was never intended by the parties that any subsequent cash purchases by Couvillon should or could be imputed to that debt, in order to lessen or extinguish the liability of the guarantor.

For the reasons assigned, it is ordered, adjudged, and decreed that the original judgment of this court be annulled and set aside, and it is now ordered that the judgment appealed from be, and it is, affirmed.

Original decree annulled; judgment appealed from affirmed.

WESTERFIELD, Judge (dissenting).

I adhere to the views expressed in our former opinion. For these reasons, I therefore respectfully dissent.