Paul V. Guillot, a resident of Avoyelles Parish, died therein in the year 1929, leaving a widow, Celeste Lemoine, and the following named children and grandchildren, as his sole heirs, to-wit:
Arnold and Valsin, sons; Mrs. Edvise G. Carmouche, wife of John Carmouche, and Mrs. Irma G. Morris, wife of Arthur Morris, daughters; Etta, Rosney and Tussie Guillot, children and sole heirs of Dorci Guillot, a predeceased son. At the date of death of the elder Guillot, he owned thirty-two (32) acres of land in Avoyelles Parish, described as follows:
NW 1/4 of SE 1/4, Section 23, Township 2 North, Range 3 East, less eight (8) acres previously sold to one Sosthene Mayeaux.
This land was adjudicated to the State on February 3, 1934, for delinquent taxes for the year 1932. The taxes, interest and costs of sale amounted to $25.60.
By authentic act of sale on February 4, 1938, Celeste Lemoine, widow, and all of the heirs of her deceased husband, named above, except Mrs. Morris, and the son, Valsin, conveyed their right, title and interest as widow and heirs in and to the land to Thomas J. Kelone, for the declared price of $25 cash. This deed contains the following provision, to-wit:
"* * * with full power and authority hereby given the purchaser to redeem the said property from the State of Louisiana to which it was sold for taxes of 1932 in the year 1934 as per sale recorded in Book A-61 at page 217 of the records of this Parish, and to do and perform any and all acts or sign and execute any and all deeds necessary or incidental in order to give the purchaser a perfect title to the said property. * * *"
Kelone redeemed the land from the tax adjudication to the State on August 19, 1940, by paying all taxes, state, parish and others then due, beginning with the year 1932, and the cost of the adjudication to the State, the total amount being around $180. Therefore, in addition to the $25 cash paid by him he was forced to make this additional outlay to clear the title given him by the widow and heirs.
On December 24, 1940, Thomas J. Kelone sold the land by warranty deed unto the present defendant, Cleonile Kelone, for $200 cash and reserved therefrom one-fourth of all minerals.
On March 4, 1941, Valsin Guillot sold his 1/10th interest in the land to defendant for $35 cash.
The present suit was instituted on April 23, 1942, by Celeste Lemoine, widow, and the heirs of Paul V. Guillot, deceased, who signed the deed to Thomas J. Kelone, excepting Tussie Guillot. However, omission of his name as a petitioner was evidently inadvertent as he is one of the appellants and signed the appeal bond.
Mrs. Morris joined in the suit as plaintiff but only to have her 1/10th interest in the land recognized. The plaintiffs, save Mrs. Morris, seek to have the sale by them to Thomas J. Kelone annulled and set aside, firstly, on account of allegedly fraudulent misrepresentations in connection with its confection, and, secondly, for lesion beyond moiety. However, Cleonile Kelone only is impleaded as defendant. Prior to the filing of the suit Thomas J. Kelone died. It seems to us his heirs should also have been joined as defendants, but the failure to do so is not tendered as an issue in the case.
Plaintiffs, except Mrs. Morris, allege that prior to the redemption of the land from the tax adjudication, Cleonile Kelone, pretending to act for the interest of the widow and heirs of Paul V. Guillot, deceased, *Page 518 
offered to redeem the property from the State and thereafter cultivate same and repay himself from the net revenues thereof, and then return the land to said widow and heirs; that said plan was a fraudulent scheme to obtain a deed from said widow and heirs upon the pretense that same was necessary to effect said redemption; that relying upon said representations petitioners were fraudulently induced to sign the deed wherein the power to redeem is specifically conferred; that the deed was taken in the name of Thomas J. Kelone but was for the benefit of Cleonile Kelone, who, it is averred, furnished the recited consideration of $25 and took possession of the land and cultivated same continuously thereafter and who was in reality the true purchaser; that being financially embarrassed the title was not taken in his own name.
Plaintiffs further aver that at the time of the deed to Thomas J. Kelone, the land was well worth $1,000; that the price of $25 was paid solely to Mrs. Guillot in order to lull her into a sense of security, etc.
In the alternative, should it be found and held that the instrument signed by plaintiffs was in reality a sale, they aver that it is subject to be declared null for lesion beyond moiety because the recited price, plus outlays by Thomas J. Kelone to clear the title is less than one-half of the value of the property.
The prayers of the petition are consonant with the allegations thereof.
Defendant admits that Mrs. Morris has an undivided 1/10th interest in the land. He denies specifically all the allegations of fraud, etc., attributed to him in connection with the deed to Thomas J. Kelone and the redemption of the land from the State. He avers that he purchased the land from Thomas J. Kelone upon the faith of the public records of Avoyelles Parish, nearly three years after Thomas J. Kelone acquired deed thereto, and relied upon said records as full protection in so doing; that subsequent to acquiring deed from Thomas J. Kelone he learned that two of the heirs of Paul V. Guillot, deceased, to-wit, Mrs. Morris and Valsin Guillot, did not join in the deed to him; that he endeavored to purchase these interests and did acquire that of Valsin Guillot on March 4, 1941. He alleges that for the year 1938 he rented the land from Thomas J. Kelone for 1/4 of what was produced thereon; that its present value is far greater than when he began to work and cultivate the same, and such value is largely due to his own labor. He denies that the laws relative to lesion beyond moiety are applicable to him, he being a purchaser in good faith, relying upon the public records as his guide. Alternatively, he pleads the prescription of four years provided in Article 1876 of the Civil Code against that part of the demand which invokes the law governing actions based upon lesion beyond moiety.
The court rejected the demands of all plaintiffs and gave sound written reasons therefor. They prosecute this appeal.
Contrary to the allegations of the petition, it is clearly shown that defendant had nothing whatever to do with the discussions and negotiations with the plaintiffs or any of them prior to the execution of the deed to Thomas J. Kelone. These were had almost entirely between Thomas J. Kelone and Mrs. Celeste Lemoine, the widow. The record is equally barren of any testimony of probative worth to support the allegation that defendant, and not Thomas J. Kelone, was the real purchaser from petitioners. It is shown that Thomas J. Kelone visited the home of Celeste Guillory the morning of the day the deed was signed and there discussed with her the purchase of the land. As Kelone is dead we are without the benefit of his testimony. It is certain, however, some agreement was reached between him and the widow because he returned that afternoon with Mr. L.P. Gremillion, an attorney at law, and notary public, from Marksville, Louisiana, of unquestioned integrity, who had previously prepared the deed which is assailed. The testimony of Mr. Gremillion leaves no doubt that the character of the instrument was fully explained by him to those who signed it. He acted as notary public and signed the instrument as such. The $25 was paid by Kelone in cash to Mrs. Celeste Guillory in the presence of and obviously with the consent of the other vendors.
However, our view of the issues in the case and the law applicable thereto render it unnecessary to make a definite finding on the controversial facts prior to and at time of the execution of the deed by plaintiffs. On its face the deed is a perfect act of sale. In addition to transferring title to the land, it gave to Kelone the right to redeem the property from the tax adjudication to the State. This was merely surplusage as he had such right anyway. It was evidently out of an abundance of *Page 519 
caution that this stipulation was incorporated in the deed.
Plaintiffs allowed the deed to Kelone to remain unquestioned on the public records for more than four years. They allowed him to have cultivated and improved the property, pay taxes thereon and exercise all rights of ownership and possession openly during that time.
Defendant testified that he purchased the land from Thomas J. Kelone upon the faith of the public records and had no knowledge whatever of the misunderstandings, if any, charged by plaintiffs. His testimony in this respect is to no extent contradicted.
Article 2236 of the Civil Code is a protecting shield to all persons who make investments in immovable property upon the faith of registered authentic acts. It reads:
"The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."
As early as 1837, in the case of Foster's Heirs v. Foster's Administratrix et al., 11 La. 401, the court was called upon to decide a case in principle not unlike that which now confronts us. In no uncertain manner did the court dispose of the question. As reflected from the syllabus, it held:
"A bonâ fide purchaser, ignorant of the nature of the sale to his vendor, cannot be affected by any fraud between the original parties * * *."
The fundamental principle embodied in this holding has been uniformly adhered to, to the present time. Many cases enunciate the same. Among them is that of Davis, Administrator, et al. v. Greve Wilderman, et al., 32 La.Ann. 420. The most recent case dealing with this principle, coming to our knowledge, is that of Chachere et al. v. Superior Oil Company et al., 192 La. 193,187 So. 321, in which it is held:
"Persons dealing with immovable property have right to depend on faith of recorded title thereto and are not bound by secret equities between their vendor and prior owners of property."
The law is equally as clear that regardless of the inadequency of the price (if such did exist), paid by Thomas J. Kelone for petitioners' interest in the land, the right to invoke the law relative to lesion beyond moiety may not be extended to Cleonile Kelone in view of his status as purchaser from Thomas J. Kelone. He paid a fair price for the property and was in good faith as purchaser.
It was held in Morgan v. O'Bannon Julien et al., 125 La. 367, 51 So. 293, that:
"Whether or not the original vendee had knowledge of the inadequacy of the price at the time of the sale cannot affect a third person purchasing from the original vendee, when such third person purchased in good faith."
This doctrine is reaffirmed in Prater v. Porter et al.,176 La. 324, 145 So. 675, and in Harvey v. Engler et al., 184 La. 858,168 So. 81.
As the judgment rejected the demand of Mrs. Irma Morris, whose 1/10th interest in the land is admitted by defendant, it will have to be amended so as to recognize that interest as well as that of defendants. Therefore, for the reasons herein assigned, the judgment appealed from is amended by recognizing and decreeing the land in controversy, to-wit: NW 1/4 of SE 1/4, Section 23, Township 2 North, Range 3 East, less eight (8) acres previously sold to Sosthene Mayeaux, situated in Avoyelles Parish, Louisiana, to be owned as follows:
An undivided 1/10th interest by plaintiff, Mrs. Irma Morris, wife of Arthur Morris, and undivided 9/10ths interest by defendant, Cleonile Kelone, and as thus amended, said judgment is affirmed. Appellants, excepting Mrs. Morris, are cast for all costs.
 On Rehearing.
Rehearing herein was applied for by all plaintiffs. It was granted only as to the demand of Mrs. Irma G. Morris to recover the value of timber cut and removed from the land involved, and the value of the use of the land for the period of defendant's possession thereof. Neither of these questions was discussed in written reasons for judgment of the lower court nor was either specifically passed upon. They were likewise treated here.
Since defendant was only a tenant of the land prior to acquiring it from Thomas J. Kelone in December, 1940, at most he may be held liable for a fair rental value for the years 1941 and 1942, of that portion of the land claimed by Mrs. Morris; and for any timber cut and removed prior to December, 1940, he may not be condemned to pay the value thereof.
We are satisfied from the testimony that defendant believed he was acquiring a *Page 520 
good and valid title to the entirety of the land when he purchased it from Thomas J. Kelone. There is nothing in the deed to him nor in the record otherwise to unfavorably affect his good faith at that time, but early in the year 1941 he learned that the interests of Mrs. Morris and Valsin Guillot were outstanding. He endeavored then to acquire these interests but succeeded only as to the latter. Obviously, from the time of this knowledge defendant was in legal bad faith and in this quality held the interest of Mrs. Morris. Therefore, he is due her rent for the use of her interest in the land for the years of 1941 and 1942. R.C.C. arts. 503, 3453.
Defendant used and cultivated twenty-four (24) acres of the land for 1941 and 1942. Its use is shown to have been worth Five Dollars ($5) per acre or a total of One Hundred Twenty Dollars ($120) per year for the entire tract. Mrs. Morris' interest therein being one-tenth (1/10) she should recover Twenty-four Dollars ($24).
The testimony is exceedingly vague and indefinite as to when the timber was cut and removed from the land or who did the cutting and removing. We really think the tract was virtually denuded of practically all the merchantable timber prior to date of the deed to Thomas J. Kelone. Anyway, it is fairly certain defendant cut and removed only small trees from the few acres he cleared. These were of little value (which is not definitely proven) and their removal, as a matter of fact, enhanced the value of the property. He should not be condemned to pay for the trees he did remove.
For the reasons herein assigned, it is ordered, adjudged and decreed that Mrs. Irma G. Morris do have and recover judgment against defendant, Cleonile Kelone, in the sum of Twenty-four Dollars ($24) with legal interest from judicial demand herein until paid; and in all other respects the judgment heretofore rendered in this case is reinstated and made final. *Page 619