FRUGÉ, Judge ad hoc.
Alleging themselves to be forced heirs of John Talley, Sr., plaintiffs instituted this suit against the heirs of William Talley and their transferees to set aside two acts of sale (of the same property) that John Talley, Sr., executed to William Talley. The first sale was passed on July 8, 1930, and recorded at Book 112, page 122 of the Conveyance Records and the second sale is dated April 10, 1933 and is recorded at Book 112, page 416, both in the records of St. Martin Parish, Louisiana.
The property is described as being the WYz of Ej/á of Section 30, Township 8 South, Range 7 East less the NWj4 of the iNE}4 °f said section, plus a forty-arpent tract that is bounded on the north by S. Cor-mier, or assigns, south by the tract above described, east by St. Martin Land Company, et al. and west by Dupuis heirs.
The plaintiffs attack from these two acts based upon three grounds, alternatively: (1) Simulation; (2) Lesion; and (3) That it is a prohibited donation.
While the tract of land is said to contain 160 acres, plaintiffs do not allege as to the value of the property at the time of either sale. Plaintiffs state appellee John Talley, sold it to Mitchell Talley on July 27, 1946, for a recited consideration of $4,000. The latter reference to this last sale is not supported by evidence in the record. John Talley, Sr., the landowner, was the father of William Talley, plaintiff herein, and plaintiffs claim that the son did not pay his father any consideration in either of the sales. Accordingly, they claim that the transfer was a simulation. In the alternative, they claim that if the recited consideration was paid, it does not amount to one-fourth of the value of the property which is applicable to a s-ale between father and son under Article 2444 of the LSA-Civil Code and, therefore, they attack the sale for lesion. In the second alternative, plaintiffs allege that if the sales are donations then they are null under Codal, Article 1497 because John Talley had not sufficient property for his own subsistence after the sale.
William Talley died on January 26, 1935, and this land formed a part of the assets of his succession. In the succession proceedings the property was allocated to his son, John W. Talley. The son sold it to Mitchell Talley and on June 26, 1948, it was adjudicated to John B. Talley. Hence, in addition to the heirs of William Talley, the plaintiffs made Mitchell Talley and John B. Talley, defendants.
The pleadings do not reflect why both of these persons were made parties defendant. Inasmuch as John B. Talley is the tax ad-judicatee of the property it would seem that only he has an interest in it.
These latter two, Mitchell Talley and John B. Talley, filed the exception of no right or cause of action. They base their exception on that they are innocent third party purchasers of the property, who purchased it in good faith, relying upon the public records of St. Martin Parish, and that their title cannot be defeated even if the complaints of the plaintiffs were true. The plaintiffs take issue with exceptors that they are innocent third party purchasers and entitled to the legal cloak of protection the law throws around those who purchase on the faith of public records. They base this argument on the contention that the recited consideration in the sale is so out of proportion to the value of the property that the exceptors should have taken notice that the consideration was insufficient to support the sale. This is the main point in controversy. The first sale was *302 for a recited consideration of $100 in the year of 1930 and the second sale was for $1 and other valuable consideration in the year of 1933.
On the issues thus presented on the trial of the exception of no right or cause of action, the District Court rendered judgment maintaining the exceptions and dismissing plaintiffs’ suit at their costs, for written reasons assigned.
Plaintiffs’ petition alleges that the deeds dated, respectively, August 8, 1939, and April 10, 1933, “represented attempts on the part of the said John Talley and William Talley to defraud the aforesaid of their legitime”. However, it is pertinent to point out that the petition is devoid of any allegation that Mitchell Talley and John B. Talley were in bad faith when they bought the property for the deeds dated, respectively, August 27, 1946, and June 26, 1948. It does not allege that these two defendants or any of the other defendants, for that matter, had any knowledge whatsoever of any infirmities in the sales by John Talley to William Talley, nor does it question the good faith of Mitchell Talley and John Talley and it does not attack their deeds or pray that they be set aside.
Practically an identical situation was presented wherein the court sustained an exception of no right or cause of action in the case of Jackson v. Creswell, 1920, 147 La. 914, 86 So. 329, 332. In that case, the court said:
“And, still again, though plaintiffs allege that Creswell, the only person whom they have cited, is in possession, claiming title, through mesne conveyances, under the conveyance from James W. Jackson to T. Anderson Jackson though that conveyance is valid on its face, translative of title, and has stood unchallenged on the public records for more than 14 years, and though it is necessary to plaintiffs’ success that it should be shown (in this suit) to be simulated and absolutely void, they have made no allegation which purports to connect Creswell with any defect therein, or even attributes to him any knowledge of such defect. It is to be presumed that he bought upon the faith of the record, as made by the decedent, who was the then sole owner of the property and who is the author under whom plaintiffs claim; and, as the record discloses no fraud or simulation in the deed by which decedent parted with it, Creswell is protected by the record against the charge of fraud and simulation, unless alleged and shown to have participated therein. McDuffie v. Walker, 125 La. 152, 51 So. 100; Dreyfous v. Cade, 138 La. [297] 298, 70 So. 231.” (Italics by court.)
Under the jurisprudence of this State in disposing of an exception of no right or cause of action all well-pleaded facts are taken as true. It is equally well settled that the exceptor cannot be bound and the court cannot consider facts which are not alleged. This is particularly true with respect to fraud or bad faith. Good faith is always presumed and it necessarily follows that a charge of bad faith must be specially pleaded and in the absence of a special plea, no evidence can be received to attempt to prove it. The following cases sustain this proposition of law: Jackson v. Creswell, supra; Lawrence v. Bowman, 6 Rob. 21; Aucoin v. Marcel, La.App., 38 So.2d 81.
Plaintiffs, in support of their position, in the case at bar, cite the case of Hearon v. Davis, La.App., 8 So.2d 787, 792 and claim that it has full application here.
In that case Mr. and Mrs. D. R. Hearon transferred to their daughter and her husband, Mr. and Mrs. W. L. Davis, a tract of land containing twenty acres for $25 cash and the undertaking that their daughter and son-in-law would provide their needs as long as they lived. Mr. and Mrs. Hearon lived with the Davises until Mrs. Hearon died about two years later. Mr. Hearon *303 continued to live there several years longer. Joined by his other children, he filed suit against the Davises and five other persons who had purchased parts of the property from them. In the suit plaintiffs claimed that the Davises failed to carry out their obligation to care for Mr. Hearon, and, additionally, that the cash consideration recited in the sale was not serious; that it was a donation in disguise; and that at the time of the donation the donors did not reserve for themselves sufficient property for their subsistence as is required by Article 1497 of the LSA-Civil Code.
The Court held for plaintiffs. It reasoned that the twenty acres of land were well worth $800 and the real consideration for its transfer by Mr. and Mrs. Hearon was the undertaking of the Davises to support them, and that the $25 cash consideration was insignificant, and whether or not it was paid made no difference.
It said:
“ * * * Anyone examining the public records and reading the instrument with a view of purchasing the property or any part of it would unquestionably have decided that its real and true consideration was not the $25 but the onerous condition incorporated therein; and this being true, the character of the act as a donation should have been apparent.”
It then quotes Article 1497 of the LSA-Civil Code which reads:
“The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole.”
The court then cited several cases holding that the transfer of property for the obligation of supporting the transferror is a donation and not a sale.
In answer to the contention of the third parties who claimed to have purchased some of the property on the faith of the public records, the court said:
“Whether or not a donor reserves to himself sufficient property to provide him with subsistence is a question of fact, which, of course, the public records do not disclose. However, a purchaser from the donee assumes the risk of losing the property to the donor if the facts warrant application of the rule laid down in Article 1497 of the Civil Code.”
The basis of the decision, as it relates to the rights of the third persons who claimed to have purchased the property on the faith of the public records, is that, on its face, the transfer appeared to he a donation, so they received it subject to the infirmities which attach to donations. For its authority in so holding, the court cited the case of Litton v. Stephens, 187 La. 918, 175 So. 619.
In the latter case a transfer of land in consideration of support for the transferror was also involved. The court determined that the donor had not reserved enough property for his subsistence and that the donation was void under LSA-Civil Code Article 1497. The question of the rights of purchasers on the faith of public records was not involved because, on its face, the transfer was a donation.
At this point, we take the liberty of quoting from the trial court’s judgment in the case at bar:
“But this is not the case here. The first sale attacked, and the one through which title passed, was regular in form, and contains nothing in the deed to indicate that it is anything but a cash sale. It is true the recited consideration is only $100.00. But what was the market value of the land at that time, in the year 1930? Perhaps that is all it was worth and perhaps it was worth much more. It is common knowledge that some of the economic cycles we have experienced reduced *304 the ownership of farm lands to a liability instead of an asset. However, the pleadings do not state the character of the land in controversy. But those are questions with which a purchaser need not be concerned.
“Our jurisprudence has always been that a purchaser need not go beyond the deed to inquire into the adequacy of the purchase price of the property he intends to acquire, and it matters not whether, or not, the price was actually paid. For the sake of stability in the title to immovables, this rule is obvious.”
On the question of lesion, it is of no concern to such third party that either their immediate vendors or more remote ancestors in title might have acquired the property, or any part thereof, for an inadequate consideration or no consideration at all.
Article 2464 of the LSA-Civil Code provides that the .consideration in an act of sale must be serious, and not out of all proportion with the value of the thing sold, and the Code contains two other correlative provisions carrying out the policy of the civil law with respect to the seriousness of the consideration in an act of sale. Thus, we see that Article 1861 provides that, in sales of immovable property, the vendor may be relieved if the price given is less than one-half of the value of the thing sold, and Article 2444 provides that the sales of immovable property made by parents to their children may be attacked by the forced heirs, if the latter can prove that no price has been paid or that the price was below one fourth of the real value of these immovables at the time of the sale.
In searching our jurisprudence, however, with respect to lesion, it is well for us to keep in mind two questions: (1) Was the action or contest between the original parties to the transaction, or was the action or contest between the original parties and third parties? (2) Was the instrument in the form of an act of donation on its face, or was it in the form of an outright sale?
It is the settled jurisprudence that when an instrument is in the form of an act of sale and the property has passed into the hands of a third party purchasing on the face of the public records, that Article 2464 (relating to the adequacy of the consideration); Article 1861 (relating to lesion beyond one-half) ; Article 2444 (relating to lesion beyond one-fourth), and Article 1497 (relating to donations omnium bonorum), do not apply.
On the question of an alleged inadequacy of consideration received by the original grantor from the original grantee, insofar as third purchasers are concerned, the Supreme Court, in the case of Harvey v. Engler, 184 La. 858, 168 So. 81, 83, involving lesion beyond moiety, said:
“There is neither allegation nor proof in the record that the appellant, Mrs. Geneva Engler, widow of Hugh Billingsley, was not an innocent purchaser of the property, and for a valuable consideration. Being a purchaser in good faith, and for a valuable consideration, plaintiff’s alternative plea of lesion beyond moiety, cannot be invoked against her. Prater v. Porter, 176 La. 324, 145 So. 675; Morgan v. O’Bannon & Julien, 125 La. 367, 51 So. 293.”
Another case also involving lesion beyond moiety on the same point, the court held, in Lemoine v. Kelone, La.App., 18 So.2d 516, at page 519:
“The law is equally as clear that regardless of the inadequacy of the price (if such did exist) paid by Thomas J. Kelone for petitioners’ interest in the land, the right to invoke the law relative to lesion beyond moiety may not be extended to Cleonile Kelone in view of his status as purchaser from Thomas J. Kelone. He paid a fair price for the property and was in good faith as purchaser.”
*305 In the case of Prater v. Porter, 176 La. 324, 145 So. 675, 676 (involving Article 1497, an alleged donation omnium bonor-um), which was disposed of on exception of no cause of action, the Supreme Court said:
“We think, however, that the codal article and the decisions based thereon have no application to this case. The litigants in the cited cases were original parties to the contracts attacked. The rights of third persons were not involved. In this case, the original contract attacked purports on its face to be a sale and not a donation, and so far as the defendant A. T. B. Porter and the Bank of Coushat-ta are concerned they occupy the position of innocent third person purchasing from the purported vendees in possession, relying on the public records.”
“There is no law prohibiting the owner of real property from selling the property to his daughter-in-law and grandson. The price as finally expressed in an act of sale represents the stated consideration for the sale. And a vendee who has paid an adequate price cannot be dispossessed of his property because a prior vendor has chosen to part with his title for an inadequate consideration. Morgan v. O’Bannon & Julien, 125 La. 367, 51 So. 293.”
On the question of lesion, plaintiff cites the following cases: Nofsinger v. Hinchee, La.App., 199 So. 597; Long v. Sun Company, 132 La. 601, 61 So. 684; and Spanier v. De Voe, 52 La.Ann. 581, 27 So. 174. These authorities are not applicable here, because the contest involved was between the original parties at interest.
Plaintiffs point to the fact that the phrase “and other valuable considerations” in the deed of April 10, 1933, did not appear in the record book and suggests that it would be proper for the court to “presume” that this language was added after recordation. Under the law and the ju-risprudence of this State the public original records are presumed to be correct. See Casso v. Ascension Realty Co., 195 La. 1, 196 So. 1, 130 A.L.R. 636.
Article 2252 of our LSA-Civil Code states that when acts of notaries when deposited in the office of the parish recorder, form a part of the archives of his office. Under other articles of the Code, to wit: 2245, 2254, 2264, and 2266, it is the “deposit” of an instrument with the Clerk of Court and his endorsement thereon of the time it was received by him that constitutes notice to third parties. As a practical matter, it is proper for us to observe that transcription in the Books of Conveyances comes later and is quite an additional function. It is held in Lewis v. Klotz, 39 La.Ann. 259, 1 So. 539, that the deposit of the instrument with the Clerk is all that is required. See also the case of Wood Preserving Corp. v. Mitchell Tie & Lumber Co., La.App., 167 So. 122. Continuing along that same line, it was decided in Burgas v. Stoutz, 174 La. 586, 141 So. 67, that notice attaches from the time of the deposit of the instrument and it therefore, logically follows, that the provisions of the original instrument govern.
We again take the liberty of referring to the trial court judgment in connection with this “and other valuable consideration” clause, when it said:
“It has become a common practice in this state in leasing and in other transactions of land for mineral purposes not to recite the true consideration in the deed. These deeds are given effect by our courts. See Crichton Co., Ltd. v. Smith [18 La.App. 567], 137 So. 643; Breeden v. Breeden [La.App.], 147 So. 757; State ex rel. Muslow v. Louisiana Oil Refining Corporation [La.App.], 176 So. 686.”
Article 1497 of the LSA-Civil Code provides :
“The donation inter vivos shall in no case divest the donor of all his prop *306 erty; he must reserve to himself enough for his subsistence; if he does not do it, the donation is null for the whole.”
In the case of Waller v. Colvin, 151 La. 765, 767, 92 So. 328, 331, Mrs. Mary E. Pearson executed an act of sale in authentic form to J. D. Colvin, and Colvin conveyed the property to a third person, who purchased upon the faith of the public records. The lower court, over strenuous objection, admitted oral testimony to show that the original sale by Mrs. Pearson to Colvin was intended as a donation omnium bonorum which divested her and her husband of their entire property; and that the purchase price named in the act as a consideration for the sale was not in fact paid, nor intended by the parties to be paid. Based on such evidence, the lower court decided against the innocent third purchaser. The Supreme Court, even with the evidence in the record showing the true transaction, annulled the judgment of the lower court, in saying:
“The conveyance records are the only things to which one dealing with real estate or any real right ever needs to look, under repeated decisions of this Court. Baird v. Atlas Oil Co., 146 La. [1091] 1099, 84 So. 366. * * *
“It follows, therefore, that oral evidence was not admissible to show any fraud on the part of Colvin in obtaining the act of sale in this case, or to show that said act was intended as a donation omnium bonorum, and therefore null and void ab initio, as plaintiff is an innocent third person purchasing upon the face of the public records.
“Nor could parol testimony be received in this case to show that no consideration was paid, as said act is authentic in form, and full proof of the recitals therein contained. C.C. Art. 2236.”
In the case of Chachere v. Superior Oil Company, 192 La. 193, 187 So. 321, which involved an action by the heirs of Mr. and Mrs. Theodore C. Chachere, Sr., to recover from third persons who had acquired on the face of the public records, which we think is most pertinent to the issues here, the Supreme Court said:
“It is the well settled jurisprudence of this state that third persons dealing with immovable property have a right to depend upon the faith of the recorded title thereof and are not bound by any secret equities that may exist between their own vendor and prior owners of the land.” (Citing 15 cases).
“Plaintiffs, having alleged that the property was acquired immediately after the dissolution of the community that existed between their ancestor, Theodore C. Chachere, Sr., and his wife, Perena Young, and the several deeds transferring the same subsequently executed by their said ancestor, alleged to be donations in disguise, being on their face perfectly valid, cannot now be permitted to introduce evidence tending to vary the public records after the same has passed into the hands of third parties. We therefore conclude that plaintiffs are without a right or cause of action.”
We, therefore, believe the District Judge properly disposed of the issues by ruling on the exception of no cause or right of action. In the case of Prater v. Porter, supra [176 La. 324, 145 So. 676], the Supreme Court said:
"Plaintiff alleged that Porter knew, or should have known, that she claimed to be the owner of the property. She further alleged that Porter is charged with knowledge that the act of sale from Hardy Hall to Jane Hall and Willie Hall was purely gratuitous in character, because of: (1) the statement in the instrument that Jane Hall is the daughter-in-law and Willie Hall is the grandson of Plardy Hall; (2) the apparent intention of the per *307 son who prepared the notarial act to write in a consideration different from the $200 recited therein, as is evidenced hy the words ‘whatever amount’ written in and then stricken out of the space allotted for the statement of the consideration; (3) the vile price of the cash consideration set forth in the act of sale; (4) that Hardy Hall was dead at the date of Porter’s purchase of property from Jane Hall and Willie Hall; (S) that the succession of Hardv Hall had never been opened; (6) that hy virtue of the alleged conveyance to Jane Hall and Willie Hall, Hardy Hall divested himself of all his property; (7) that the alleged act of sale was not recorded until the day after the death of Hardy Hall occurred, which was twenty days after the instrument was executed; and (8) that plaintiff joined Hardy Hall in a donation of a portion of his property to the African Methodist Church on October 8, 1923.”
In that case, the Supreme Court, in disposing of the exception of no cause of action, stated:
“Plaintiff, in support of her demand, cites Article 1497 of the Civil Code and a number of cases interpreting the article, to the effect that where a donor divests himself of all his property the donation is null, and it is not saved by the obligation on the part of the donee to support the donor.”
“We think, however, that the codal article and the decisions based thereon have no application to this case. The litigants in the cited cases were original parties to the contracts attacked. The rights of third persons were not involved. In this case, the original contract attacked purports on its face to be a sale and not a donation, and so far as the defendants A. T. B. Porter and the Bank of Coushat-ta are concerned, they occupy the position of innocent third persons purchasing from the purported vendees in possession, relying on the public records.
“Plaintiff’s allegations that the defendant Porter knew or must have known that she claimed the property and that Hardy Hall by the conveyance to Jane Hall and Willie Hall divested himself of all his property are insufficient to charge Porter with bad faith, because the conveyance records are the only things to which one dealing with real estate or real rights needs to look. Notice or knowledge dehors the public records on the part of a third person is not equivalent to registry. Dalbey v. Continental Supply Co., 165 La. 636, 115 So. 807; Howard v. Coyle, 163 La. 257, 111 So. 697; Waller v. Colvin, 151 La. 765, 92 So. 328.
“Nor was it a matter of importance that Porter knew or should have known that Hardy Hall was dead and that his succession had not been opened, since Hardy Hall, the record owner, had sold the property prior to his death.
“Plaintiff’s allegations that the statement in the act of sale that Jane Hall was the daughter-in-law and that Willie Hall was the grandson of Hardy Hall, that the consideration as finally expressed was not the consideration originally intended, and that the consideration as recited represented a vile price, are not sufficient to take the defendant Porter out of the category of a purchaser in good faith.
“There is no law prohibiting the owner of real property from selling the property to his daughter-in-law and grandson. The price as finally expressed in an act of sale represents the stated consideration for the sale. *308 And a vendee who has paid an adequate price cannot be dispossessed of his property because a prior vendor has chosen to part with his title for an inadequate consideration. Morgan v. O’Bannon & Julien, 125 La. 367, 51 So. 293.”
For the above and foregoing reasons, the judgment of the District Court maintaining the exception of no right or cause of action insofar as defendants John B. Talley and Mitchell Talley are concerned, is hereby affirmed.
Affirmed.