271 So.2d 299 (1972)
BREWSTER DEVELOPMENT COMPANY, INC., Plaintiff-Appellant,
v.
Garland FIELDER, Defendant-Appellee.
No. 11961.
Court of Appeal of Louisiana, Second Circuit.
November 28, 1972.
Rehearing Denied January 9, 1973.
Writ Refused February 13, 1973.
*300 Ford E. Stinson, Benton, for plaintiff-appellant.
Love, Rigby, Dehan & Love by Kenneth Rigby, Shreveport, for defendant-appellee.
Before AYRES, PRICE and HEARD, JJ.
En Banc. Rehearing Denied January 9, 1973.
AYRES, Judge.
This is an action for the rescission of a sale of a described tract of land for lesion beyond moiety. Plaintiff alleged that The National Bank of Bossier, as its agent, executed a deed on August 8, 1967, conveying the property to the defendant, Garland Fielder, for a recited consideration of $39,279.21, whereas the property had a value in excess of twice that amount.
To plaintiff's action, defendant interposed exceptions of no cause and of no right of action. These exceptions were sustained and plaintiff appealed from a judgment dismissing his action.
The bases of defendant's position with reference to the pleas are (1) that at the time of his purchase The National Bank of Bossier was the record owner of the propertythat, as apparent from the deed, a *301 copy of which was attached to plaintiff's petition, the bank, as defendant's vendor, did not appear in any representative capacity but appeared and represented itself as the sole, record owner of the property; (2) that the bank acquired the property from plaintiff, Brewster Development Company, Inc., by deed dated May 5, 1967, and duly recorded on May 8, 1967, in the conveyance records of Caddo Parish, Louisiana, as is shown by a certified copy of the deed attached to and made a part of defendant's exceptions; that, by this deed, plaintiff conveyed and the bank acquired title to the property in consideration of the surrender and cancellation of two mortgage notes covering the property, obligations of plaintiff, aggregating, in principal, $70,000.00; (3) that defendant acquired the property from the bank upon the faith of the public records and for a valuable consideration; (4) that defendant is not bound by, nor is his title affected by, any unrecorded agreement or equities, if any, existing between plaintiff and defendant's vendor; that such instruments are null and void as concerns defendant and his ownership of the property; (5) that an action for the rescission of the sale of an immovable estate is not available against a subsequent purchaser of the property relying upon the public records.
The acts of sales (1) from plaintiff to the bank and (2) from the bank to defendant are regular on their faces. There is no language or provision in either deed indicating that the sale were anything other than unconditional, good-faith sales for cash or its equivalent. Moreover, the resolution of the bank's board of directors authorizing the sale of the property to defendant is unconditional. There is no recital in the resolution that the bank was acting as agent for plaintiff in making the sale or that plaintiff reserved the right to redeem the property. Nor was there any mention or representation in the resolution of plaintiff's board of directors authorizing the sale of the property to the bank indicating that the sale was made with a right of redemption or that the title to the property was placed in the bank for convenience or accommodation. The resolution simply directed a sale of the property by plaintiff to the bank without reservation.
The instruments upon which plaintiff relies for its claims that it had the right to redeem and that the bank acted as its agent were not executed until September 9, 1969, more than two years after defendant had acquired title to the property and after he had placed his deed on record.
Thus, it is very clear that, as of the time of defendant's purchase, there was nothing of record placing him on notice that either the sale by plaintiff to the bank or the sale by the bank to defendant was in anywise conditional or that either sale was anything other than in good faith and in regular form. The conclusion is inescapable that the aforesaid instruments on which plaintiff relies in order to maintain this action, not recorded for more than two years after defendant acquired and recorded his title, are null and void and without any effect so far as defendant and his title are concerned.
The court, in McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909), discussed the prior jurisprudence with which we are here concerned and held that the law which declares all contracts affecting immovable property "shall be utterly null and void, except between the parties thereto," is clear and unambiguous and that it was intended to settle, in this State, the question whether knowledge possessed by a third person of a contract affecting immovable property should be considered, so far as such person is concerned, equivalent to the registry of the contract, and it settled that question in the negative. This principle has been consistently followed.
Moreover, the rule is well established that third persons dealing with immovable property have not only the right to rely upon the faith of the public records but that they are not bound by any secret equities or unrecorded agreements which *302 may exist between prior owners of the property. Chachere v. Superior Oil Co., 192 La. 193, 187 So. 321 (1939); Sklar Producing Co. v. Rushing, 262 So.2d 115 (La.App., 2d Cir., 1972cert. denied).
As correctly pointed out in the latter case, an unrecorded letter agreement, even when referred to in a recorded instrument, is null and void and without force or effect so far as third parties are concerned.
Thus, the rule is well established in the jurisprudence of this State that third persons dealing with immovable property need only look to the public records in determining the validity of title thereto. McDuffie v. Walker, supra; Coyle v. Allen, 168 La. 504, 122 So. 596 (1929); Goldsmith v. McCoy, 190 La. 320, 182 So. 519 (1938); Chachere v. Superior Oil Co., supra; Jackson v. Golson, 91 So.2d 394, 402 (La.App., 2d Cir. 1956cert. denied).
Therefore, we must conclude that the documents executed by Durham, as president of The National Bank of Bossier, with respect to plaintiff's alleged right to redeem the property and that the bank was acting as plaintiff's agent, are inadmissible against defendant, Fielder.
Without giving effect to the instruments executed by the president of The National Bank of Bossier, more than two years after defendant's acquisition and recordation of title, as indeed we cannot, there is nothing in the record which would impugn his title or indicate, in the slightest degree, that he was other than a good-faith purchaser upon the faith of the public records. The conclusion is inescapable that defendant's title is unaffected by the subsequent execution and recordation of the instruments upon which plaintiff relies to support his cause of action.
Moreover, an action for the rescission of a sale of immovable property on account of lesion beyond moiety is not available against a subsequent vendee of property who purchased it for a valuable consideration, relying upon the public records. Bradford's Heirs v. Brown, 11 Mart., O.S., 217, 220 (1822); O'Brien v. LeGette, 254 La. 252, 223 So.2d 165 (1969); Dugas v. Talley, 109 So.2d 300, 304 (La. App., 1st Cir. 1959).
The character of this action, however, is not to be confused with an action of a similar character instituted by a former vendor against his vendee for a deficiency in price after the property had been sold and the title placed in a third party beyond his reach. (See O'Brien v. LeGette, supra.) But is must be emphasized that the vendee of an estate cannot be disturbed on the score of lesion in a sale by which his vendor acquired title. Morgan v. O'Bannon & Julien, 125 La. 367, 371, 51 So. 293, 294 (1910); Wilkins v. Nelson, 155 La. 807, 99 So. 607 (1924); Harvey v. Engler, 184 La. 858, 168 So. 81, 83 (1936); Dugas v. Talley, supra.
In Dugas v. Talley, there is this appropriate observation:
"It is the settled jurisprudence that when an instrument is in the form of an act of sale and the property has passed into the hands of a third party purchasing on the face of the public records, that Article 2464 (relating to the adequacy of the consideration); Article 1861 (relating to lesion beyond one-half); Article 2444 (relating to lesion beyond one-fourth), and Article 1497 (relating to donations omnium bonorum), do not apply."
109 So.2d 304.
Thus, for the reasons assigned, the conclusion is inevitable that defendant's title, as a good-faith purchase on the faith of the public records, is unaffected and unassailable, under the laws of registry (LSA-R.S. 9:2721-2722), by or under instruments neither executed nor recorded at the time defendant acquired and registered his muniment of title.
However, in view of the fact there are no allegations of fraud, Article 2236 of the *303 Civil Code applies to the situation presented here. This article states:
"The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."
Thus, it is appropriate to point out that parol evidence is not admissible to establish that either the vendor or vendee in a deed acted in any other capacity than that represented in the deed, nor that the vendor was acting not in his individual capacity as owner of the property but as the agent of another. Pike v. Kentwood Bank, 146 La. 704, 83 So. 904 (1919); Sladovich v. Glaser, 150 La. 918, 91 So. 297 (1922); Serio v. Chadwick, 66 So.2d 9, 15 (La.App., 2d Cir. 1953).
For the reasons assigned, the judgment appealed, sustaining exceptions of no cause and of no right of action, and involving title to the following-described property, to-wit:
"All that part of Southeast Quarter of Northwest Quarter (SE ¼ of NW ¼) of Section 23, Township 18 North, Range 15 West, lying above the 172 foot contour of Cross Lake containing 31.18 acres, and all that part of Southwest Quarter of Northeast Quarter (SW ¼ of NE ¼) of Section 23, Township 18 North, Range 15 West, lying North and West of the 172 foot contour line of Cross Lake, containing 12.70 acres, more or less, Caddo Parish, Louisiana.
"All that part of Lot 2 lying North of Lakeshore Drive in Section 23, Township 18 North, Range 15 West, Caddo Parish, Louisiana, containing 21 acres, more or less, together with all buildings and improvements thereon.
"An undivided one-fourth (¼) interest in 60.04 acres being that portion of the Southwest Quarter (SW ¼) and the West 14.6 acres of the Southeast Quarter (SE ¼) of Section 23, Township 18 North, Range 15 West, Caddo Parish, Louisiana, lying North of Lot 2 and above the 172 foot contour line of Cross Lake,"
is affirmed at plaintiff-appellant's costs.
Affirmed.